SIDNEY ST. F. THAXTER

AND

MONTGOMERY BLAIR, JR.

TRUSTEES

*vs.*

THE CANAL NATIONAL BANK OF

PORTLAND, TRUSTEE, ET AL.

Cumberland. Option, June 13, 1949.

*Linnell, Nulty, Brown, Perkins, and Thompson,*
       for Sidney St. F. Thaxter et al., Trustees.

*Hutchinson, Pierce, Atwood, and Scribner,*
       for Canal National Bank of Portland.

*Clement F. Robinson,*
       for Sheridan Brook Fry.

*Berman, Berman, and Wernick,*
              for George Gardner Fry, Jr.
              Elizabeth F. Newhouse
              Edgar L. Newhouse III
              Alan I. Newhouse
              Olney M. Fry
              Olney M. Fry, Jr.

*H. Warren Paine,*
       for Montgomery Blair, Jr.

SITTING: STURGIS, C. J., MURCHIE, FELLOWS, MERRILL, JJ.

TOMPKINS, J., sat at argument and participated in consultation but died prior to the preparation of the opinion.

MURCHIE, J.   In this Bill in Equity, which comes to the court on report, the plaintiffs seek determination of "the effect and construction" of the will of Mary J. E. Clapp, late of Portland, and four codicils thereto, admitted to probate in October, 1920, and referred to hereafter as the "Will," to resolve two issues hereafter stated.   The process discloses that the Will was construed by a single justice of the court, in earlier proceedings which have a direct bearing (although not a controlling one), on one of them, in a

decree entered May 10, 1922, referred to hereafter as the "Decree."

The testatrix died a resident of Portland on September 9, 1920. The plaintiffs are successor trustees of a trust established under the Will, referred to hereafter as the "Trust," and will be referred to hereafter as the "Plaintiffs," to distinguish them from the trustees named in the Will, and earlier successor trustees, referred to hereafter as the "Trustees" and the "Successor Trustees," respectively. The Trustees administered the Trust from its establishment until March 1924 and the Successor Trustees thereafter until January 1941. Since the latter date it has been administered by the Plaintiffs. The defendants are the trustee of an Indenture executed by the Trustees to secure bonds issued by them, pursuant to the Decree, referred to hereafter as the "Trustee" and the "Indenture," respectively, as the representative of the holders of the bonds secured thereby, and all persons entitled to share currently in any distribution of the net income of the Trust, including minors represented by a guardian *ad litem* and one individual whose status is one of the issues to be resolved, and all contingent remaindermen, a guardian *ad litem* representing all those unascertained or not in being. Unless the text indicates otherwise, references to "Bonds" hereafter will be to the bonds outstanding at the time of reference. They are now outstanding in the principal amount of $295,000, out of an original issue of $300,000. The term "Beneficiaries" will designate, collectively, all persons entitled to the benefits of the Trust at any one time. In reference to the present process it will identify all the defendants except the Trustee.

The Trust was established to continue "during the period of the entire natural life of the last survivor" of eight persons named in the Will, referred to hereafter as the "Named Beneficiaries," or such of them as were living at the death of the testatrix and entitled to share in the net income of it, and "during the additional period of twenty-one (21) years

and (sic) after the death of such last survivor." That it will continue more than 21 years from the date the evidence in the record was taken out is established by the fact that one of the Named Beneficiaries, so entitled, was then living. A particular purpose of the Trust was to provide for the erection of "a handsome, imposing and substantial block," referred to hereafter as the "Block," on the property which the father of the testatrix, and his father, had occupied as a residence, designated hereafter, as in the Will, the Decree and the Indenture, as the "Homestead Lot," as a memorial to them. The testatrix declared that she had held the property unencumbered since the death of her father and directed that it should be retained in the Trust during the full term thereof; that no portion of it should be sold or otherwise disposed of "except by ordinary and customary leases;" and that the principal of the Trust, at its termination, necessarily including the Homestead Lot and its improvements, should be "transferred, conveyed and distributed" to those entitled to it "as tenants in common." The Will carried the recommendation of the testatrix that the original construction of the Block should cost not less than $300,000, exclusive of the Homestead Lot and any materials taken from the structures standing thereon which might be used in connection therewith.

The Will made an elaborate and complete disposition of all the tangible personal property of the testatrix, provided legacies aggregating $65,000, $25,000 payable only if the beneficiaries named survived the testatrix, or were in her employ at the time of her death (payment being deferred until after the construction of the Block, unless a delay of more than five years from the death of the testatrix was thereby involved), set up annuities representing a maximum annual charge of $2,774, and let the entire residue fall into the Trust. The "entire net income" of the Trust, except as otherwise provided in the Will (in manners not pertinent to the present issues), was to be "paid over to or applied for the benefit of" descendants of the grandfather

180

the Block was to commemorate, and a grandmother, "annually, or oftener," and it was stated specifically that the "net rents" of the Homestead Lot should be "taken as a part" thereof. The term "Net Rents" was not defined, but must have been intended to designate the annual excess of gross income over operating expenses and taxes, and will be so used hereafter. The descendants of the grandfather and grandmother among whom the Trust income was to be distributed, or for whose benefit it was to be applied, were the Named Beneficiaries and their descendants, not including any "divorced or * * * living apart from * * * wife or husband" at the time of the death of the testatrix, or the child or children of any such.

In the proceedings in which the Decree was entered the Trustees sought to have the Will construed with reference to their authority to borrow money for the construction of the Block and to issue evidences of indebtedness secured by a mortgage on real estate held in the Trust. In the allegations of their process they referred to a provision of the Will directing that a particular parcel of land, which was the only property subjected to the lien of the Indenture at the time of its execution, should not be sold to raise the construction funds, unless "absolutely necessary" in their judgment, and declared their judgment that such a sale was not desirable, partly because the particular parcel was leased advantageously and yielded a substantial part of the income of the Trust available for the Beneficiaries, and was not necessary, and their belief that it was advisable to borrow money for construction of the Block, upon the security of the property held in the Trust, or some portion of it. The Decree construed the Will as authorizing the Trustees to borrow and to mortgage, but stipulated explicitly that they should not mortgage the Homestead Lot and should not issue evidences of indebtedness enforceable against it. Definite recitals were that the Trustees "in the discharge of their duties" as such and "for the purpose of effecting the objects of said trust" were authorized by the Will "to

borrow money from time to time on the credit" of the Trust and "to borrow money and procure loans from time to time," the borrowing recitals being followed, in each instance, by declaration of their authority, under the Will, to issue obligations "enforceable against the whole trust estate" except the Homestead Lot, and to mortgage the whole or any part of the real estate, with the same exception.

Pursuant to the Will, as construed by the Decree, the Trustees executed the Indenture and issued the Bonds on June 1, 1922, using a form for the latter substantially identical with one set out in the Decree. The Bonds were payable on June 1, 1937, but were extended as of that date to June 1, 1947, under an agreement between the Successor Trustees and the Trustee, referred to hereafter as the "Extension Agreement," to which holders of Bonds might become parties by depositing their Bonds and having them stamped. The record does not disclose what Bonds, if any, were deposited and stamped, but no rights are asserted in the process on the basis of unstamped Bonds. As of May 16, 1947, in compliance with a covenant of further assurance contained in the Indenture, the Plaintiffs executed a supplemental indenture, referred to hereafter as the "Supplemental Indenture," subjecting all the real estate held in the Trust to the lien of the Indenture, except that already subject thereto and the Homestead Lot. The Plaintiffs had earlier notified the holders of the Bonds that they would not be paid on their extended maturity date. They instituted the present process on May 26, 1947, and on June 1, 1947 defaulted on the payment of the final instalment of interest and the principal of the Bonds. The record discloses that the Trustee has foreclosed the Indenture and that liquidation of all the property of the Trust except the Homestead Lot will not provide for the payment of principal and interest of the Bonds. It carries no evidence to establish the amount of the deficiency, or the rental yield of the Homestead Lot, or the amount of Net Rents in any year or ac-

182

cumulated and on hand. Whether such rental yield might be sufficient to pay such deficiency as there may be, if available for the purpose (one of the issues of the process), and applied to that purpose exclusively, during the remaining term of the Trust, cannot be determined on the record.

In the administration of the Trust, prior to an approximate month before the filing of the process, when one of the Beneficiaries requested the Plaintiffs not to apply income of the Trust derived from the Homestead Lot to the payment of interest on the Bonds, all the income of the Trust from whatever source derived, including the rental of the Homestead Lot, was treated as gross income, and was held available for, and applied to, the payment of expenses and taxes applicable to the property of the Trust, indiscriminately, treating the interest requirements of the Bonds as expenses of the Trust. Periodic accountings filed in the Probate Court having jurisdiction of the Trust by the Trustees, the Successor Trustees and the Plaintiffs, who, properly, support neither the Beneficiaries nor the holders of the Bonds in this proceeding, have been rendered on that basis and allowed. It is asserted on behalf of the holders of the Bonds that an estimate of the income of the Trust, following the completion of the Block, given to the purchaser of the Bonds by the Trustees, when the Bonds were issued, carries an implied promise that the Net Rents would be available to meet the obligations of the Bonds. An express promise to that effect was given to the Trustee by the Successor Trustees in the Extension Agreement.

The issues to be resolved are (1) whether the current and accumulated Net Rents shall be paid to the holders of the Bonds, in payment of such deficiency of interest and principal as may be established in the foreclosure proceedings, or belong to the Beneficiaries and should be paid to them or applied for their benefit, and (2) whether Sheridan Brooks Fry, a son of one of the Named Beneficiaries, is excluded from all benefits under the Will because he was married

while a minor without the consent of his parents, obtained a decree of divorce from the wife so married, and married another, prior to the death of the testatrix, the wife so divorced having had the decree of divorce vacated, thereafter, and secured a divorce for herself.

The first issue is so clearly one of novel impression that no counsel has been able to cite a decided case in any jurisdiction, or any legal text, which has a direct bearing on it. It is asserted on behalf of the Beneficiaries that the language of the Will directing that the Net Rents "shall be taken as a part of the net income" of the Trust and that the net income shall be distributed among them, or for their benefit, "annually, or oftener," is clear, explicit and unambiguous and requires that such Net Rents shall be so "paid over * or applied," and that they are entitled thereto, without reference to that language under the recognized principle of law that rents accruing on real property after the death of an owner pass with the property, to heirs or devisees, and do not become a part of the estate of a decedent to be handled by an administrator, or by an executor unless so provided by the will under which he holds. See *Paradis, Appellant*, 134 Me. 333; 186 A. 672, the authorities cited therein, and 32 Am. Jur. 364, Sec. 448.

This issue must be resolved by determining the rights of the parties without reference to any promise of the Trustees or the Successor Trustees, implied or express, to the purchaser of the Bonds, or to the Trustee; the method of handling the Net Rents prior to the time when the propriety of that method was challenged by the Beneficiaries; the allowance of accounts in the probate court; or the purported authorizations of the Decree. The rights of the Beneficiaries are controlled by the provisions of the Will. Those of the holders of the Bonds can be no greater than such provisions warrant and need be no less, except so far, if at all, as the provisions of the contracts represented respectively by the Bonds and the Indenture give such holders some-

thing less than the Will would have warranted. A bond is a contract. *Harvey* v. *Rackliffe,* 141 Me. 169; 41 A. (2nd) 455; 161 A. L. R. 296; *Paulsen* v. *Paulsen,* 144 Me. 155; 66 A. (2nd) 420; 11 C. J. S. 399, Sec. 2. So also is a mortgage indenture. As the writer of the text in *Secundum* states, a bond is the "primary contract," a mortgage a separate contract "to secure payment." What the situation might be if the Trustees, in executing the contracts represented by the Bonds and the Indenture, or either of them, had exceeded the authority conferred upon them by the Will, or the Decree, or if the Decree had purported to authorize them to do something the Will did not warrant, we do not need to consider. No claim is asserted that the Trustees exceeded in any way the authorizations of the Decree and while the brief submitted on behalf of the Trustees, and the holders of the Bonds, asserts that courts have authority to authorize trustees to borrow money without specific authority conferred by the instrument establishing the trusts in their hands, and cites decided cases and text writers to support that contention, it was stated by counsel for those parties at oral argument that no claim was asserted in the instant case that the Decree deviated in any respect from the provisions of the Will.

Analysis of the Will, the Decree and the contracts represented by the Bonds and the Indenture discloses that they are of identical import in their application to the Homestead Lot. The Will provided, among other things with reference thereto, that it should constitute a part of the Trust, during the full term thereof; that it should not be encumbered by the Trustees except "by ordinary and customary leases;" that its Net Rents should be distributed, "annually, or oftener," among a changing group of Beneficiaries; and that title to it should vest in the Beneficiaries, as the group was constituted at the termination of the Trust, "as tenants in common." The Decree excepted the Homestead Lot from the property the Trustees were authorized to mortgage, and from that against which obligations of the estate

issued by them might be enforced. The Bonds and the Indenture recognized the limitations imposed upon the Trustees by the Decree. The Bonds incorporated the Indenture by reference. The Trustees did not subject the Homestead Lot to the lien of the Indenture. They excluded it from their undertaking to furnish additional security. The Bonds, it is true, carry the unconditional promise of the estate (the Trust) to pay the bearer, or registered holder, of each, its principal amount, with interest, but the promise carried in each of them is common to all. There are express recitals in the Bonds that all of them "are issued under and equally secured by" the Indenture, and that reference thereto should be had "for a description of the mortgaged real estate and of the rights and remedies of the holders * * * in regard to the mortgage security." Those references incorporate in the Bonds the extended provisions of an Article of the Indenture entitled "Remedies on Default," wherein it is stated plainly that if default is made in the payment of the principal of the Bonds the Trustee may recover judgment against the Trust, but that no such judgment "shall run against the Homestead Lot." An additional reference to that lot is contained in an Article entitled "Unencumbered Property and Accounts and Audit." Therein it is declared that that property "is free from any claims of the holders of the bonds."

The Trustee, and the holders of the Bonds, being precluded by the terms of their contracts with the Trust from enforcing any judgment against the Homestead Lot, are not entitled to have the income from it applied in payment of either the principal of the Bonds or the interest thereon. The Plaintiffs are authorized to pay the Net Rents now in their hands, and that available thereafter, after paying all operating expenses and taxes applicable to the Homestead Lot, to the Beneficiaries.

The second issue, involving the status of Sheridan Brooks Fry, is controlled by the testatrix's final statement of the

scope of the clause under which she excluded descendants of her grandparents from her bounty for what she must have regarded as an objectionable matrimonial record. That final statement, appearing in the ninth paragraph of the second codicil of her Will, where she struck out the original one, as earlier modified, reads:

"I expressly exclude * * * any * * * descendants * * * set out and enumerated * * * who may be living at my decease * * * divorced or * * * living apart from * * * wife or husband, together with the child or children of such descendant, it being my intention that such descendant and child or children shall not be * * * entitled to receive income and principal * * * and * * * shall be forever debarred from any participation in my estate."

Sheridan Brooks Fry was not one of the descendants "set out and enumerated." His father, Alfred Fry, now deceased, was. The father survived the testatrix, became one of the Beneficiaries and shared in all distributions to them during his lifetime. His status, at the death of the testatrix, controls that of his children and their descendants, without reference to their individual matrimonial records. The Plaintiffs are authorized to pay a proportionate share of such income of the Trust as is available for distribution among the Beneficiaries during his lifetime to Sheridan Brooks Fry.

Reasonable costs and counsel fees for the Trustees and the Beneficiaries may be fixed by the sitting justice and allowed in the account of the Trustees.

*Case remanded for a decree in accordance with this opinion.*