JOSEPH R. CIANCHETTE IN THE NAME OF
EDWARD S. TITCOMB, TRUSTEE IN BANKRUPTCY
OF MAINE STATE RACEWAYS
*vs.*
ROBERT A. VERRIER, ET AL.

Cumberland.  Opinion, May 8, 1959.

*C. Keefe Hurley,*
*Clair Cianchette,*
*James L. Reid,* for plaintiff.

*Robinson, Richardson & Leddy,*
*Verrill, Dana, Walker, Philbrick & Whitehouse,*
*Hutchinson, Pierce, Atwood & Allen,* for defendants.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, DUBORD, SIDDALL, JJ. SULLIVAN, J., did not sit.

DUBORD, J. This cause is before the court upon plaintiff's appeal from a decree of the sitting justice allowing defendants' pleas of estoppel by judgment and dismissing plaintiff's bill in equity.

Pursuant to permission granted by the United States District Court, Joseph R. Cianchette brought a bill in equity, dated January 3, 1956, in the name of Edward S. Titcomb, duly appointed trustee in bankruptcy of Maine State Raceways, a Maine corporation. Joseph R. Cianchette alleges in the bill that he is creditor and stockholder of Maine State Raceways and that he brings the bill on behalf of himself and all others similarly situated.

The bill alleges that the defendants "did willfully and intentionally scheme and conspire at a time when some of

the defendants occupied a fiduciary relationship with respect to Maine State Raceways and the others acting with full knowledge thereof, and by the use of corporate and other devices, to defraud the said Maine State Raceways by obtaining legal title to extremely valuable race track properties by unlawful means and placing same in the name of defendant, Scarborough Downs (a Maine Corporation), and causing the said Maine State Raceways to become a bankrupt corporation to the detriment of its creditors and stockholders."

Other allegations in the bill, and evidence disclosed by the transcript, indicate that it was the contention of Joseph R. Cianchette that title to the race track properties, known as Scarborough Downs, was acquired by the present owner through fraud and deceit.

The bill prays for

(1)  An accounting on the part of the defendants;

(2)  That defendants be declared to be trustees for Maine State Raceways in respect to all profits, cash, properties or securities found to have been realized or received by the defendants in connection with their operation and control of the race track property at Scarborough Downs;

(3)  That the defendants, Scarborough Downs and Scarborough Holding Company be decreed to be trustees with respect to all properties relating directly or indirectly to the race track properties for Maine State Raceways, or the trustee in bankruptcy of Maine State Raceways;

(4)  That defendants be ordered to convey the assets of the aforesaid race track properties to Maine State Raceways or to the trustee in bankruptcy for the benefit of its creditors and stockholders; and

(5)  That the defendants be enjoined from operating the aforesaid race track.

Upon motions filed by the defendants, Rebecca Goldfine, Executrix, Morton Goldfine and Sidney Goldfine, the actions against these defendants were dismissed for want of jurisdiction.

The other defendants filed pleas of collateral estoppel by judgment inserted in their answers to the bill.

The pleas of the remaining individual defendants and corporate defendants were as follows:

"II.   And Defendant Robert A. Verrier further pleads to the Plaintiff's Bill, and for plea says: On the 1st day of October, 1951, Maine State Raceways filed a debtor's petition for reorganization under Chapter X of the Federal Bankruptcy Act. (11 U.S.C. Sections 501-676.) This petition listed in Paragraph 11 the possibility of the Corporation having 'assets consisting of claims against officers, directors and others not shown on the books of the corporation.'

"The issue of the claims of the corporation against these defendants was an essential element of the hearings on the petition for reorganization. Furthermore, such issue was actually brought into the hearings by the attorney for Plaintiff Cianchette and the debtor corporation, C. Keefe Hurley, and testimony was taken under oath in relation thereto.

"The allegations in the present Bill in Equity relating to the alleged unlawful fraud or scheme perpetrated by the defendants were alleged in essentially the same manner and to the same effect in the aforesaid reorganization proceedings. Comparison of the allegations in the Plaintiff's Bill with those made in the reorganization proceedings as shown in the record on appeal is set forth in Exhibit A attached hereto and made a part hereof.

"The United States District Court for the District of Maine on April 1, 1952 appointed as Trustees in the afore-

said reorganization proceedings Franklin G. Hinckley, Esq., of Portland, Maine, bar, and Cornelius J. Russell of Bangor. The Trustees were specifically ordered by said court as follows:

'9.d. To institute, prosecute and defend, intervene in or become a party to such other actions or proceedings in law or in equity, in State or Federal Courts, as may in their judgment be necessary or advisable for the protection, maintenance and preservation of the property and assets of the within Estate.'

'13. That said trustees be, and they hereby are, directed to investigate the acts, conduct, property, liabilities and financial condition of said Debtor, the operation of its business and the desirability of the continuance thereof, and any other matter relevant to the proceedings or to the formulation of a plan . . .'

"These aforesaid trustees represented by counsel, Edmund P. Mahoney, Esq. and Barnett I. Shur, Esq., pursuant to the foregoing orders, examined all persons having any knowledge bearing thereon, including this Defendant, at hearings on July 9th, 10th, 15th and 21st of 1952. This testimony was not made a part of the record on appeal. All parties to the present Bill in Equity were present either in person and/or represented by counsel at all the aforesaid hearings.

"The aforesaid trustees reported to the United States District Judge as instructed on July 28, 1952. Their findings was as follows:

'Many mistakes were made which were to be expected in the operation of a new enterprise, but with exceptions of isolated instances of alleged misconduct, which so far remain unproven, no substantial evidence of fraud has been discovered.' (Record on Appeal, page 580)

"The aforesaid trustees investigated said defendants and their relations with Maine State Raceways prior to leasing

the properties of said corporation and reported the results of such investigation to the District Court. The Court in an Opinion dated April 15, 1952 stated:

'They (the trustees) concluded Mr. Verrier, Mr. Mourkas and their attorney, Mr. Mayo S. Levenson, and the Goldfines, were persons in whom this Court could repose complete confidence.'

'. . . I feel also that everyone should be satisfied that the above-named parties have demonstrated that they are alert and worthy of the confidence of the Court.' (Record on Appeal, pages 237-238)

"This opinion was later expanded in formal manner by the reported opinion and decision of the District Court, dated June 19, 1952, 105 F. Supp. 620. (Record page 477.)

"The District Court approved and confirmed each and every report of the trustees in its entirety, and on January 16, 1953 dismissed the reorganization proceedings notwithstanding the contention that the Corporation, namely, Maine State Raceways, had a valuable asset in the form of a cause of action against these defendants. The decisions of the District Court were appealed to the United States Court of Appeals for the First Circuit by Joseph R. Cianchette, the real plaintiff in this action. In that appeal, the said C. Keefe Hurley again raised the issue of the alleged fraud practiced by these defendants against Maine State Raceways, praying that all the orders of the District Court be vacated, and that the matter be returned to the District Court for further reorganization proceedings.

"All offers of proof of fraud and conspiracy, rulings thereon, and all opinions and orders of the Referee, the Special Master, and the District Judge relating to the same were specifically included in the Statement of Points, twenty-one in number, relied on by the present plaintiff in his appeal. (Record of Reorganization Proceedings, p. 1063).

"The Court of Appeals for the First Circuit of January 15, 1954 affirmed *per curiam* all the actions of the aforesaid District Court for Maine, thus judicially determining that there was no basis for the charges of fraud alleged in that action and identical with those alleged in the present Bill.

"All issues raised by the Bill in this proceeding have been raised at least once in prior proceedings to which all the parties hereto or their predecessors in interest, were also parties and all such issues have been determined adversely to the claims of the Plaintiff in the present suit. For these reasons the prosecution of the present suit in equity is barred and estopped."

The pleas of the individual defendants were numbered paragraph II and the pleas of the corporate defendants were numbered paragraph III.

The cause was heard by the sitting justice upon a complete record of all prior proceedings in the bankruptcy matter of Maine State Raceways, including motions, petitions, hearings before bankruptcy referees, special masters, and the United States District Court, (together with transcripts of the evidence in several of the hearings), decrees, orders and reports of the referees, special masters, and the trustees in reorganization, orders and opinions of the United States District Court, and the complete record of appeal of the plaintiff herein from the orders and decrees of the referees and of the United States District Court to the Circuit Court of Appeals of the United States for the First Circuit.

After a hearing the sitting justice sustained the pleas of estoppel by judgment and dismissed the bill.

The findings of the court, dated January 30, 1958, are as follows:

"By agreement of counsel this cause came to be heard upon bill of complaint, plea II, plea III in

the pleadings of corporate defendants, evidence and arguments.

"Upon consideration thereof the Court finds that the facts relied upon by the defendants in their plea II, plea III in the pleadings of corporate defendants are proved, that plea II of the defendants, plea III of the corporate defendants should be allowed and that the bill of the plaintiffs should be dismissed.

"Defendants shall draw a decree in their favor in accordance with these findings, file it and give notice."

The final decree entered on February 24, 1958 was as follows:

"This cause came on to be heard November 1, 1956, and further heard this day, and was argued by counsel and THEREFORE upon consideration thereof and pursuant to the findings of this Court in this cause, dated January 30, A.D. 1958:

"It is ORDERED, ADJUDGED and DECREED as follows, viz.:

"That the pleas of the corporate defendants No. III and pleas of the individual defendants No. II are allowed, and that the Bill of the plaintiff be dismissed."

The record in this long pending case consists of nearly 2000 printed pages and there were so many motions and petitions, orders and decrees recorded that it is extremely difficult for one not conversant with all of the steps of the litigation to keep clearly in mind the chronology of events.

Without attempting to detail all of the facts which may be pertinent, the following statement of facts may be of assistance in understanding the issues.

Maine State Raceways was incorporated in December 1949, and built the Scarborough Downs race track in the spring of 1950.

On October 19, 1950, a corporation known as Scarborough Holding Company, Inc., which had acquired existing mortgages of the property of the corporation by assignment, foreclosed the mortgages.

On December 19, 1950, Scarborough Downs, Inc., was incorporated. On January 3, 1951, creditors of Maine State Raceways instituted involuntary proceedings in bankruptcy against the corporation. These bankruptcy proceedings are still pending and are docketed as #23,467 in the United States District Court for the District of Maine, and all of the proceedings occurring in the bankruptcy court prior to the filing of the instant bill in equity bear this number.

Scarborough Holding Company, Inc., leased the track to Scarborough Downs, Inc., for the 1951 racing season.

On October 1, 1951, Maine State Raceways filed a voluntary petition for reorganization under Chapter X of the Bankruptcy Act.

On April 1, 1952, the United States District Court for the District of Maine appointed two trustees in reorganization and authorized them to take possession of the assets of Maine State Raceways and to lease the track for the 1952 racing season.

Two days later, Joseph R. Cianchette, who had been permitted to intervene in the proceedings, as a shareholder and creditor, filed a motion to vacate the order of the District Court of April 1, 1952 authorizing the trustees in reorganization to take possession of the assets and to lease the track.

After extensive hearings the United States District Court denied the motion. In re Maine State Raceways, 105 F. Supp. 620.

On July 28, 1952 and August 7, 1952, the trustees in reorganization filed reports. The last report recommended

that no plan of reorganization be attempted with reasons set forth. The reports of the trustees were accepted by the Judge of the United States District Court and on January 19, 1953, the United States District Court ordered that the reorganization proceedings be dismissed.

On January 23, 1953 the present plaintiff and others filed a petition to restrain the Scarborough Holding Company, Inc., from foreclosing on the property of Maine State Raceways, pending determination by the trustee in bankruptcy of whether or not to prosecute the claim which is the subject of the instant case. The petition prayed in the alternative for an order disclaiming the right of the bankrupt estate to prosecute the claim and authorizing other parties in interest to do so. The referee denied this petition and the United States District Court by opinion dated October 1, 1953, and reported as In re Maine State Raceways, 115 F. Supp. 263, affirmed the decision of the referee.

Subsequently, Joseph R. Cianchette appealed to the United States Circuit Court of Appeals from all the orders previously entered by the referees in bankruptcy, the special masters and the United States District Court.

By a *per curiam* decision reported as *Joseph R. Cianchette et al.* v. *Hinckley et al., Trustees,* 208 F. (2nd) 799, the orders of the United States District Court for the District of Maine were affirmed.

On June 28, 1954, the present trustee in bankruptcy was appointed and on September 28, 1955, the plaintiff was authorized by the referee in bankruptcy to institute the present suit.

The defendants contend that the issue of fraudulent conspiracy set forth in the bill now before us has been determined adversely to Joseph R. Cianchette in three different legal proceedings and that he is now estopped by the judg-

84

ments in these proceedings from again raising the same issue.

The defendants say that when the motion filed by Joseph R. Cianchette on April 1, 1952 asking that the order authorizing the trustees in reorganization to take possession of the assets of Maine State Raceways and to lease the track be vacated, was denied by the United States District Court, this adjudication estopped proceedings in the instant action. It is the contention of the defendants that this motion of April 1, 1952 was based upon the alleged fraudulent conspiracy now the subject of the instant bill.

Defendants say further that the decree of the United States District Court accepting the reports of the trustees in reorganization, necessarily involved an adverse adjudication of Cianchette's claim that the trustees in reorganization had a valuable asset in the form of a cause of action against the present defendants for an alleged fraudulent conspiracy; and so they aver that this adjudication also acts as an estoppel.

They further say, that when the United States District Court denied Cianchette's petition for an injunction against foreclosure of the mortgages on the race track, that this also embraced a finding that there was no fraudulent conspiracy as alleged by Cianchette; and they argue that this also results in estoppel.

They further argue that the decision of the United States Court of Appeals affirming all prior orders of the United States District Court is an adjudication which estops the plaintiff in the instant action.

The plaintiff answers these contentions by saying that the doctrine of collateral estoppel is not applicable, because:

(1)    The plaintiff in the present suit was not a party to the prior proceedings and is not in privity with a party to the prior proceedings;

(2)    That the prior proceedings were not final judgments;

(3)    The question of fact here involved (the alleged fraudulent conspiracy) was not determined in the prior proceedings, and was not essential to the prior decisions; and

(4)    The question here involved was expressly reserved and not decided in the prior proceedings.

The presiding justice had before him the same record which is available to this court. The only issue, therefore, for our determination, relates to the correctness of the legal conclusions which he arrived at from the evidence disclosed by the record.

It seems essential that we should give attention to what is meant by "collateral estoppel by judgment" as distinguished from *"res judicata."* It is conceded by both sides that the doctrine of *res judicata* is not applicable to the issues in the instant case, and that the cause is to be decided by a determination of whether or not the doctrine of collateral estoppel by judgment is applicable.

Both doctrines viz.: *"res judicata"* and "collateral estoppel by judgment" are based on the theory of estoppel. However, much confusion appears to have arisen in court decisions as well as in various textbooks as to a true distinction between the two theories which preclude relitigation.

The following quotations will serve to explain the confusion previously referred to and also to point out the distinction between *"res judicata"* and "collateral estoppel by judgment."

"The doctrine of res judicata as stated in many cases is that an existing final judgment rendered upon the merits, without fraud or collusion, by a court of competent jurisdiction, is conclusive of rights, questions, and facts in issue, as to the parties and their privies, in all other actions in the same or any other judicial tribunal of concurrent jurisdiction." 30A Am. Jur. § 324 Res Judicata, at 371.

"The doctrine of res judicata may be said to inhere in the legal systems of all civilized nations as an obvious rule of expediency, justice, and public tranquility. Public policy and the interest of litigants alike require that there be an end to litigation which, without the doctrine of res judicata, would be endless. The doctrine of res judicata rests upon the ground that the party to be affected, or some other with whom he is in privity, has litigated, or had an opportunity to litigate, the same matter in a former action in a court of competent jurisdiction, and should not be permitted to litigate it again to the harassment and vexation of his opponent. The doctrine of res judicata not only puts an end to strife, but produces certainty as to individual rights and gives dignity and respect to judicial proceedings. It is considered that a judgment presents evidence of the facts of so high a nature that nothing which could be proved by evidence aliunde would be sufficient to overcome it; and therefore it would be useless for a party against whom it can be properly applied to adduce any such evidence, and accordingly he is estopped or precluded by law from doing so." 30A Am. Jur. § 326 Res Judicata, 373.

"At the outset of the consideration of the doctrine of res judicata, it must be noticed that there is a wide difference between the effect of a judgment as a bar to the prosecution of a second action upon the same claim, demand, or cause of action, and its effect to preclude the relitigation of particular facts or issues in another action between the same parties on a different claim or cause of action. The

rule precluding the relitigation of the same cause of action and the rule precluding the relitigation of the same issues do not necessarily have the same consequences. However, the distinction between the two rules has not always been recognized and both rules are frequently included within the use of the term 'res judicata' and the term 'estoppel by judgment.'" 30 A Am. Jur. § 327 Res Judicata, 375.

"The doctrine of res judicata has been declared to be a branch of and grounded in the law of estoppel, and the opinions applying the doctrine of res judicata, which speak of the party being thereby 'estopped' are so numerous as to make citation thereof neither necessary nor desirable. The term 'estoppel' is frequently used both in connection with the rule which precludes the relitigation of particular facts and issues, and the rule which precludes the relitigation of particular causes of action. Sometimes the phrase 'collateral estoppel' or 'estoppel by judgment' is used to describe the first rule. On the other hand, 'estoppel by judgment' has been used to describe the effect of a judgment to bar subsequent actions founded on the same cause of action, and the phrase, 'estoppel by verdict,' to describe the effect of the former proceeding to preclude further litigation on the particular facts on which the jury necessarily made findings in the former action. The latter doctrine is sometimes regarded as arising by way of estoppel, rather than by way of strict res judicata. However, although there may be cases in which both doctrines may be applied, the general principle of estoppel, while akin to, must be distinguished from, the doctrine of res judicata, since it is not governed by the same limitations." 30A Am. Jur. § 328 Res Judicata, 376.

A good example of the fact that confusion has been caused by misapplication of the terms is given by the following quotation from 50 C. J. S. § 593, at 13, which seeks to distinguish *"res judicata"* from the doctrine of "estoppel by judgment."

"The law of res judicata is frequently treated as a branch of the law of estoppel, and both terms have been used indiscriminately to indicate the force and effect of judgments and decrees. Such treatment has been criticized as a confusing and erroneous misapplication of terms which should be distinguished, and the recognized basis of the rule of res judicata is different from that of technical estoppel."

"It has been pointed out that the difference between the effect of a judgment as a bar to the prosecution of a second action on the same claim or demand and its effect where the subsequent action involves a different cause of action or claim is often overlooked, with the result that the law is sometimes misapplied. As is discussed infra §§ 657, 716, in an action on the same claim or demand the former adjudication concludes parties and privies not only as to every matter offered and received to sustain or defeat the claim, but also as to every matter which might and should have been litigated in the first suit, while in an action on a different claim or demand only those facts or matters are conclusively established by the former adjudication which are essential to, or shown to be involved in, the judgment or decree rendered. The so-called estoppel in the former class of cases frequently is termed 'estoppel by judgment,' while that in the latter class of cases is termed 'estoppel by verdict.' In some cases, however, the rule which forbids the relitigation of a particular fact or matter in dispute between the parties has been denominated 'estoppel by judgment,' although the subsequent action is on a different cause of action; in such cases the term 'res judicata,' as distinguished from 'estoppel by judgment,' is applied to the rule that a judgment bars a second action on the same cause of action."

In describing the general principle of *res judicata* our own court has held in numerous opinions that when the matter in controversy has once been inquired into and

settled by a court of competent jurisdiction it cannot be again drawn in question in another suit between the same parties or their privies. It has also been held that the principle includes not only issues actually tried, but those that might have been tried. Our court has also pointed out that the rule does not apply where the issue is expressly reserved and it has been held that the essential element of the doctrine is identity of the issue. Our court has said that where issues are different, *res judicata* cannot be upheld and that the rule is conclusive only to such facts without proof of which it could not have been rendered. *Bray* v. *Spencer*, 146 Me. 416, 418, 82 A. (2nd) 794; *Mitchell* v. *Mitchell*, 136 Me. 406, 413, 11 A. (2nd) 898; *Burns* v. *Baldwin-Doherty Co.*, 132 Me. 331, 333, 170 A. 511; *Susi* v. *Davis*, 133 Me. 354, 358, 177 A. 610; 134 Me. 308, 312, 186 A. 707; *Edwards* v. *Seal*, 125 Me. 38, 40, 130 A. 513.

> "It is wholly immaterial to the question of the conclusiveness of a judgment, whether the issue between the parties was raised by the averments of the plaintiff or of the defendant. The real point is, was the fact in issue the subject of judicial controversy, relied upon either in the support or the defence of the action, and comprehended within the verdict at the former trial? If so, it is, by inference of law, conclusively settled between the parties by the judgment." *Walker* v. *Chase*, 53 Me. 258, 262.

See also *Kelsey* v. *Irving*, 118 Me. 307, 311, 108 A. 100; *Arsenault* v. *Brown Company*, 122 Me. 52, 55, 118 A. 738; *Bowker Fertilizer Company* v. *Cluskey*, 124 Me. 384, 130 A. 209.

See the case of *United States* v. *Silliman*, 167 F. (2nd) 607, for an excellent opinion which deals with the distinction between the ordinary term of *"res judicata"* and "collateral estoppel." The decision in this case is to the effect that where a question of fact essential to a judgment is actually litigated and determined by a valid final judgment,

the determination is conclusive between parties in subsequent action on a different cause of action.

"Under the doctrine of collateral estoppel, an aspect of res judicata, though the causes of action be different, a decision by a court of competent jurisdiction in respect to any essential fact or question in one action is likewise conclusive between the same parties in all subsequent actions, and this applies to a state court judgment upon a contested issue which is sought to be applied in a suit between the same parties in a federal court." *Vanderveer* v. *Erie Malleable Iron Company*, 238 F (2nd) 510, 512.

"In any suit at law, or in equity, a judgment by a court of competent jurisdiction in a prior action between the same parties is generally conclusive, under the doctrine of res adjudicata, as to issues tried or that might have been tried. If for a different cause of action it is conclusive by estoppel as to matters actually litigated." *Bray* v. *Spencer, supra.*

"Where the parties are the same but the cause of action, or issue, is different, the prior judgment is only conclusive upon such issues as actually tried, and the burden is on the party setting up an estoppel by judgment to show that the same issue was involved and determined, on its merits, in the prior proceeding." *Bray* v. *Spencer, supra.*

The rule of collateral estoppel by judgment is succinctly set forth in § 68 (1) Restatement of the Law of Judgments, Page 293 as follows:

"Where a question of fact essential to the judgment is actually litigated and determined by a valid and final judgment, the determination is conclusive between the parties in a subsequent action on a different cause of action, except as stated in sections 69, 71 and 72." (Exceptions inapplicable to issues in instant case.)

That the doctrines of *res judicata* and collateral estoppel by judgment are applicable to decisions in bankruptcy proceedings is indicated by a long line of decisions. See *Abrott v. Athanasatos*, 61 P. (2nd) 982; *Baker Clothes, Inc. v. Miller* (N. Y.), 144 N. Y. S. (2nd) 11; *McCulloch v. Davenport Savings Bank*, 226 F. 309; *Blanks v. West Point Wholesale Grocery Company* (Ala.), 142 So. 49; *McMahon v. Pithan* (Iowa), 147 N. W. 920; *Underwood v. Lennox*, 136 N. E. 343; *Feiring v. Gano* (Colo.), 168 P. (2nd) 901; *Wiswall v. Campbell*, 93 U. S. 347; 135 A. L. R. 695; 8 C. J. S. 1314, Bankruptcy, § 444; 6 Am. Jur. (Rev. Ed) 848, Bankruptcy, § 512.

As the paramount issue for our determination is whether or not the question of the existence of a fraudulent conspiracy on the part of the defendants was litigated and determined, we give consideration first to the third contention of the plaintiff to the effect that the question of fact here involved, viz., the alleged fraudulent conspiracy was not determined in the prior proceedings and was not essential to the prior decisions.

To briefly recapitulate the three proceedings relied upon by the defendants as a basis for collateral estoppel are as follows:

(1)   The decision of the United States District Court, dated June 19, 1952, found in 105 F. Supp. 620 denying the motion of Joseph R. Cianchette to vacate the order authorizing the trustees in reorganization to take possession of the assets of Maine State Raceways and to lease the track,

(2)   The order of the United States District Court dated January 19, 1953 accepting the report of the trustees in reorganization and dismissing the proceedings for reorganization, and,

(3)   The opinion of the United States District Court dated October 1, 1953 to be found in 115 F. Supp. 263

denying the petition of Joseph R. Cianchette to restrain the foreclosure of mortgages on the property of Maine State Raceways and in the alternative for an order disclaiming the right of the bankrupt estate to prosecute the claim and authorizing other parties in interest to do so.

In the decision of the District Court of the United States to be found in 105 F. Supp. 620, the court said at page 624:

"The ultimate issue is whether or not there was an abuse of discretion on the part of the Court in its approving the lease of the debtor's property, executed by the trustees to Scarborough Downs, Inc."

The court further said at page 627:

"In the opinion of this Court this is an unusual case and immediate action was mandatory. It appeared that any further delay would have made it impossible to operate Scarborough Downs during the 1952 season, which undoubtedly would have precluded the formulation of any feasible plan of reorganization."

The court further said at page 628:

"The action of the Court in approving the lease, executed by the trustees, must stand unless an abuse of discretion clearly appears --- that is, arbitrary action not justifiable in view of the situation and circumstances."

It is clear, therefore, that although it was the contention of Joseph R. Cianchette that the court had abused its discretion in approving the lease because the lessee was an improper party and that he questioned the character of the principal owners of the lessee, the real issue was not the existence or lack of existence of a fraudulent conspiracy, but solely whether or not the court had abused its discretion. In other words, the court might have approved a lease to parties whose character might be questionable and yet

might have concluded that it was in the best interests of Maine State Raceways to approve the lease which had been executed.

We conclude, therefore, under the rules applicable to collateral estoppel by judgment that the matter of the alleged conspiracy was not actually litigated. *Susi* v. *Davis, et al.*, 133 Me. 354, 358; 177 A. 610; *Bray* v. *Spencer, supra.*

Passing now to the second proceedings relied upon by the defendants, viz., the acceptance of the report of the trustees in reorganization, the actual issue before the court was whether or not reorganization was feasible. In ruling that reorganization was not feasible and that the proceedings for reorganization should be dismissed, there was no ruling on the part of the court upon the issue of fraudulent conspiracy.

As a matter of fact, the proceedings before the trustees in reorganization were ex parte and merely for the purpose of discovery. These proceedings were not controlled in any manner by Joseph R. Cianchette and he did not have the right of cross examination.

Although there is a statement in the report of the trustees in reorganization to the effect that no substantial evidence of fraud was discovered, his finding on the part of the trustees is not necessarily the basis for the decision of the court which was merely to the effect that reorganization was not feasible.

Considering now the third proceedings relied upon by the defendants which culminated in the opinion of the United States District Court to be found in 115 F. Supp. 263, this opinion seems to conclusively point out that the issue of fraudulent conspiracy was not determined, but rather reserved.

We quote from this opinion at page 265:

"After a hearing on the petition on January 28, 1953, the Referee denied the first prayer on

the ground that the property under consideration, against which foreclosure proceedings were brought, was not in the possession or custody, constructive or otherwise, of this Court, and further it was not in custody of this Court at the time of the filing of the original petition in bankruptcy. Therefore, the Referee held that this Court lacked the power to issue a restraining order affecting the said property.

*"With reference to the second prayer, the Referee concluded that the relief prayed for was premature because Maine State Raceways has not as yet been adjudged a bankrupt; that no receiver in bankruptcy had been appointed; that since there had not been an adjudication, no trustee had or could be appointed; and that therefore there was no proper officer of the Court who could properly make an examination and investigation to determine what rights, if any, were vested in the estate and also to determine what action should be taken thereon."* (Emphasis supplied.)

It was these findings of the referee which were affirmed by the court.

That the ultimate issue of fraudulent conspiracy was reserved is also indicated by the statement of the court in 105 F. Supp. 620 at 630 as follows:

"Regardless of the relationship, unless it can be clearly and convincingly shown by the intervenors that the debtor and its creditors were to be damaged by the execution of the lease, the action of the Trustees, approved by the Court, must stand. It is, therefore, immaterial to the issue to determine the relationship between the lessee and the debtor."

"The general rule relied on by the libelee has no application to a case where the issue was not decided by the trier of facts, but expressly reserved by him for hearing in another case."
*Mitchell* v. *Mitchell,* 136 Me. 406, 413.

Undoubtedly, throughout the various hearings, counsel for Joseph R. Cianchette advanced the contention of the existence of a fraudulent conspiracy. However, the position of the plaintiff in the instant case is well taken that the fact of the existence or non-existence of a conspiracy was only an evidentiary fact rather than one of ultimate finding of fact.

See Note (P) under § 68, Restatement of the Law of Judgments, page 312:

> "The rules stated in this Section are applicable to the determination of facts in issue, but not to the determination of merely evidentiary facts, even though the determination of the facts in issue is dependent upon the determination of the evidentiary facts."

It is significant that in none of the rulings, findings and opinions of the referees and of the Judge of the United States District Court is there any specific finding that a fraudulent conspiracy did or did not exist.

The ruling of the United States Circuit Court of Appeals 208 F. (2nd) 799, sustaining the orders of the District Court merely affirmed the previous findings, viz., (1) (a) That there had been no abuse of discretion in the approval of the lease made by the trustees in reorganization; (b) that the question of the relationship between the lessee and the debtor had not been determined,

(2)  That a reorganization of Maine State Raceways was not feasible, and

(3)  (a)  The court was without power to restrain the foreclosure, and (b) that the petition for the relief prayed for was premature.

The record indicates that on August 10, 1955, Joseph R. Cianchette petitioned the court for authority to bring the action which is now before this court.

The Referee in Bankruptcy set a hearing on this petition on September 13, 1955, and notice was given. The trustee in bankruptcy filed an answer joining in the prayers of Joseph R. Cianchette. While there is nothing in the record to indicate how many of the defendants were represented by him in his capacity as attorney, the record does show that the defendant, Mayo S. Levenson was present at the hearing, at which time, the petitioner's counsel advanced arguments in support of his contention that his claim was not a frivolous one.

It is perhaps significant that the defendants did not advance any contention at that time that Joseph R. Cianchette was estopped as a result of the court proceedings now invoked as a reason for the estoppel.

The Referee in Bankruptcy in his opinion and order said:

"That there is reasonable grounds for believing that a possible cause of action exists in favor of the Trustee in Bankrutpcy of Maine State Raceways Corporation against Robert A. Verrier, Thomas Mourkas, Mayo S. Levenson, the estate of Morris Goldfine, Morton Goldfine, Sidney Goldfine, Scarborough Holding Company, a corporation, and Scarborough Downs Corporation, a Maine corporation."

The Referee further found that:

"An appropriate action in law or in equity against the above-named parties, based upon such alleged cause of action, would not be frivolous litigation."

We therefore conclude that the issue of the alleged fraudulent conspiracy has not been litigated. The instant case was heard by agreement of counsel upon defendants' pleas of collateral estoppel and we assume that the remaining plea of laches and the plea that Joseph R. Cianchette is barred from prosecuting the instant suit upon the equitable maxim that "he who comes into equity must come with clean hands" still remain for determination.

We wish to commend counsel for all parties on the very excellent and helpful briefs presented to the court.

The decree below is reversed and the cause remanded for such action as may be deemed appropriate.

*So Ordered.*