**Sidney W. THAXTER et al.**

v.

**George Gardiner FRY, Jr., et al.**

Supreme Judicial Court of Maine.

Sept. 9, 1966.

Thomas Schulten, Portland, Preti, Peabody & Johnson, by Arthur A. Peabody and Robert W. Smith, Portland, for intervenors.

Christopher A. Moen, Jr., Jotham D. Pierce, Portland, for defendant Charles C. Robertson.

Woodman, Thompson, Chapman & Hewes, by Charlton S. Smith, Portland, for defendant Montgomery Blair, Jr.

Before WILLIAMSON, C. J., and WEBBER, TAPLEY, MARDEN, RUDMAN, and DUFRESNE, JJ.

MARDEN, Justice.

This is a complaint seeking the construction of certain portions of the Will of Mary J. E. Clapp as those portions pertain to the duration of a testamentary trust and the authority of trustees thereunder in two respects, (a) the authority of the trustees to create a leasehold extending beyond the life of the trust, and (b) the authority of the trustees to create from income a reserve for depreciation and obsolescence.

In the event it is determined that the trust endures for a period beyond the

termination date of the questioned lease, question (a) becomes moot.

### Duration of Trust

■ No citation of authority is necessary to support our declared approach that the chief issue is to be determined from the intent of the testatrix, not to be resolved by a study of separate clauses, sentences, and paragraphs by themselves, but by orienting the problem to the entire instrument.

The Will was of substantial length and disposition covering real and personal estate accumulated by Miss Clapp's forebears of whom she expressed regard reflecting a reverence akin to ancestor worship. An office building, a portion of which is the subject of the question of the lease, and concerning which building the propriety of a reserve for depreciation is raised, was, by direction, constructed by the testamentary trustees as a memorial to the testatrix' parents and grandparents. The prime question has to do with the duration of the trust, of which corpus the memorial real estate is a part. The Will declared in a number of instances an intent that this memorial be lasting, and the ownership of legacies passing under the Will are circumscribed by conditions requiring family retention.

As illustration, a trustee was charged with certain duties concerning the burial place of the grandparents, and Miss Clapp directed that such provisions be carried out for the full period of time which the law might permit "and, indeed, perpetually, if it may lawfully be done," she reminding her representatives that such provisions were to her "the dearest and most important of all matters" for which a will could provide.

In a bequest to a hospital, in trust, the income from the legacy was to be applied "perpetually" in caring for rooms provided in memory of her parents and a larger bequest to the same institution, in trust, provided for the "maintaining perpetually"

free beds in memory of her grandparents, her parents and herself.

Legacies of personal property passed to legatees with the request that such items "shall pass from generation to generation in the line of the family * * * to which it properly appertains."

With relation to real estate, the family home was guarded against "stranger" occupancy and ownership, and was to be razed and the trustees directed to construct "a handsome, imposing and substantial block facing Congress Street" in memory of her father and grandfather, and "especially adapted for occupancy by stores, offices and halls. Inasmuch as the same is to be a memorial block, the · Trustees are not to sacrifice to economy or the production of large net income, its architectural character or its complete suitableness to the central and prominent locality which it will occupy, and the Trustees are to bear always in mind that my special desire and directions are that they shall erect and maintain in the best of condition and re-build in case of destruction this building * * *."

Her controlling declaration of intent, as to beneficiaries, appears in Paragraph 3 in the eighth clause where she says:

"I hereby declare that the only descendants of my grandfather, Asa Clapp, and of my grandmother, Elizabeth W. Q. Clapp, among whom the distribution (of certain personal property) provided in this Article is to be made, *and to whom or for whose benefit the net income of the trust in this will provided is to be paid or applied, and among whom the trust estate is to be distributed at the expiration of said trust are the following,* viz.: Minna Blair Richey, Woodbury Blair, Gist Blair, Montgomery Blair, Charles Q. Clapp, George Fry, Alfred Fry and Emerson Brooks, *and their descendants,* and no others, and wherever in this will descendants of my said grandfather and grandmother are mentioned, I wish it to be understood, *and I direct that the per-*

*sons above named, and their descendants, are intended,* and that no other person whomsoever shall ever receive any portion of said income or trust estate, except as otherwise expressly provided in this will." (Emphasis added.)

For purposes of this discussion we call Minna Blair Richey et als. "named descendants." The named persons are descendants *for the purposes of this Will,* not necessarily all inclusive of the descendants of grand parents Clapp.

The relationship of all of the "named descendants" to the testatrix is not given, but the record discloses that the group included persons from more than one generation.

We shall refer to that portion of Clause Eighth defining "descendants" as the "Clause Eight Mandate." By this mandate both the income beneficiaries and the remaindermen consist of one group made up of the "named descendants," including more than one degree of kindred, and their descendants.

This declaration by itself is clear and the controversy over interpretation arises in Clause Twelfth of the Will wherein the residuary trust is established and one paragraph reads as follows:

"The entire net income of the trust, except as otherwise provided in this my last will and testament, shall annually, or oftener, at the discretion of said Trustees, be paid over to or applied for the benefit of the descendants of my grandfather, Asa Clapp, and my grandmother, Elizabeth W. Q. Clapp, *hereinbefore in the Eighth Article of this will enumerated* (emphasis added), during the period of the entire natural life of the last survivor of such descendants living at my decease as are then *or may thereafter become entitled to share in said net income,* (emphasis added) and during the additional period of twenty-one (21) years after the death of such last survivor. At the expiration of said twenty-one (21) years all the principal, residue and remainder

of the trust fund shall be transferred, * * * to and among such of the aforesaid descendants of my said grandfather and grandmother as may then survive, as tenants in common, * * *, each * * taking the * * * share * * * he or she is at the time entitled to receive of the income aforesaid. Such net income shall be paid over to * * * the aforesaid descendants in the following proportions, namely: In equal shares to such of the grandchildren of my said grandfather and grandmother, that is, to such nephews and nieces of my father, descendants as aforesaid of my said grandfather and grandmother, as may at the time and from time to time be living, and to the issue at the time and from time to time living of any such nephew or niece who have deceased before me or may thereafter decease, such issue taking per stirpes, * * *."

The identity of "descendants" has a multiple significance, first as income beneficiaries (Clause Eighth), second as lives in being which fix the duration of the trust (Clause Twelfth), and third as determining ultimate shares of principal.

The meaning of the word "descendants" as it first appears in the above quotation is clear under the Clause Eight Mandate, but if, as used the second time, the descendants, whose lives govern the duration of the trust, are limited to the "named descendants," the Clause Eight Mandate and the cited portion of Clause Twelfth are irreconcilable.

It is urged that under Clause Twelfth the life of the trust was defined as that period of the natural life of the last survivor of the "named descendants" as might be living at her death, plus 21 years.

The last of the persons named in Clause Eighth died July 23, 1948, which plus 21 years would bring about a termination of the trust on July 22, 1969.

The opposing view is that the life of the trust is to be measured by the period of the

natural life of the descendants of the "named descendants" living at her decease, plus 21 years.

A descendant of those named in the eighth clause was born May 22, 1920 prior to testatrix' death on September 9, 1920, was living at Miss Clapp's decease, and if this natural life plus 21 years brings about a termination of the trust, the trust may well persist into the 21st century.

■ In instances of apparent repugnancy between two clauses of a will, it is our duty to reconcile them, if possible, considering the entire instrument 57 Am.Jur., Wills § 1128; Page on Wills § 30.10 and the intention of the testator. 57 Am.Jur., Wills § 1133.

■ There are at least four indications of Miss Clapp's intent in this regard. First, from illustrations given above, it is apparent that she wanted to honer her family as long as possible,—perpetually, if able to do so. Second, the use of the technical words in Clause Twelfth fixing the termination of the trust at the expiration of lives in being at her death, plus 21 years, manifests an awareness of the Rule against Perpetuities and is consistent with her desire to carry her testamentary planning into execution for as long a period as possible. Third, the Clause Eight Mandate expressly extends her beneficence beyond the "named descendants" and would govern the word "descendants" wherever used in the Will, including Clause Twelfth, but for an apparent limitation of Clause Twelfth descendants in measuring the life of the trust to the "named descendants." Fourth, is her declaration in Clause Twelfth that the trust was to live "during the period of the entire natural life of the last survivor of such descendants living at my decease *as are then or may thereafter become entitled to share in said net income * * *.*" (Emphasis added.) By the Clause Eight Mandate the "named descendants" and their descendants, and indeed by subsequent specific provisions in Clause Twelfth the "named

descendants" and their issue, made up the class "entitled to share in said net income." The only descendant, not an income beneficiary from the date of Miss Clapp's death, who might "thereafter become entitled to share in said net income" is the issue of a "named descendant." The Clause Eight Mandate and the express inclusion of those who, after the death of the testatrix, became income beneficiaries as whose lives in being govern the duration of the trust negate any contention that "such descendants" are limited to the "named descendants." It follows that the lives in being which govern the duration of the trust are the "named descendants" and such of their issue as were alive on the date of Miss Clapp's death.

No resort is necessary to a rule recognized in Section 246 of the Restatement of the Law, Property, Section 30.20 of Page on Wills and 57 Am.Jur., Wills § 1128 which proposes that the last clause in a will abrogates an antecedent clause.

It is held, therefore, that the testamentary trust created by Miss Clapp endures until the death of descendants living at Miss Clapp's death of the eight named persons in Clause Eighth, plus 21 years.

In a prior case involving interpretation of the Clapp Will reported as Thaxter v. Canal National Bank, 144 Me. 176, 67 A.2d 21, two issues were raised, one of which, it is contended, adjudicates the period of duration of the Clapp trust, and by which we are bound. The question before that court was not the *duration* of the trust, but whether one Sheridan Fry, son of Alfred Fry, was excluded as an income beneficiary by reason of domestic difficulties proscribed by Miss Clapp and declared as a cause for disqualification. When the court, in this prior case, held that Sheridan Fry was not one of the descendants "set out and enumerated" against whom the proscription was to be applied, it is now argued that implicitly it was a holding that the duration of the trust was determined also by the lives in being of the descendants "set out and enumerated."

■ The holding of *Thaxter*, supra, which is now urged upon us as adjudicating the duration of the trust must do so, if at all, under the rule either of *res adjudicata* or *estoppel by judgment*.

"In any suit at law, or in equity, a judgment by a court of competent jurisdiction in a prior action between the same parties is generally conclusive, under the doctrine of *res adjudicata,* as to issues tried or that might have been tried. If for a different cause of action it is conclusive by estoppel as to matters actually litigated." Bray v. Spencer, 146 Me. 416, 418, 82 A.2d 794, 795.

"A judgment is not evidence of any matter which came incidentally or collaterally in question, or may be deduced only by way of argument or construction. Certainty is an essential element, and unless it is shown that the judgment necessarily involved a determination of the fact sought to be concluded in the second suit, there will be no bar." Susi v. Davis et al., 133 Me. 354, 357, 177 A. 610, 612, 97 A.L.R. 222.

"The expression that a judgment is conclusive not only as to subject-matter, but also as to every other matter that was or might have been litigated, means that a judgment is decisive upon the issues tendered by the proceeding." Susi, supra, at 358, 177 A. at 612.

If it be demonstrated:

"(t)hat the subject matter in controversy here was brought directly in question by the issues in the prior proceedings which terminated in the form of judgments, such evidence would estop the plaintiff here." Carey v. Bourque-Lanigan Post No. 5, American Legion, 150 Me. 62, 64, 104 A.2d 438, 439.

"To constitute an *estoppel by judgment,* it must be proved affirmatively that, in the suit in which the judgment was entered, a right or claim was specifically presented, definitely passed upon, ad-

judged, and decided." Bowie et al. v. Landry, 152 Me. 88, 91, 122 A.2d 774, 776.

"The real point is, was the fact in issue the subject of judicial controversy, relied upon either in the support or the defence of the action, and comprehended within the verdict at the former trial? If so, it is, by inference of law, conclusively settled between the parties by the judgment." Cianchette v. Verrier et al., 155 Me. 74, 89, 151 A.2d 502, 510.

■ Examination of the briefs filed in *Thaxter*, supra, indicate no issue on the duration of the trust, and within the principles above set forth, the holding in *Thaxter*, supra, as to the status of Sheridan Fry was not a judgment upon the duration of the Clapp Trust.

### Leasehold

■ In the light of our conclusion on the duration of the trust the validity of the lease running to 1979 becomes moot.

### Reserve for Depreciation and Obsolescence

During the operation of the Clapp Trust to date, no reserve for depreciation and obsolescence has been created from trust income and withheld from distribution of net income. The Clapp Memorial Block conforming to the instructions in the Will was built for occupancy by stores, offices and halls, and has been so used. The corpus of the trust is entirely real estate. There is no capital fund. In at least one instance, where a capital expenditure was considered necessary, it was provided for by agreement with the income beneficiaries.

At the present time two administrative problems point up the necessity of judicial instruction. The elevator in the building is employee operated and both economics of operation and tenant satisfaction could be achieved by the installation of an automatic lift. This will require substantial outlay, without funds presently available, and without authority given in the trust instrument

to create a reserve from income to meet this need.

In connection with the lease referred to earlier in the opinion, and by reason of absence of a reserve fund, the lessees made substantial alterations and improvements the cost of which is to be amortized over the term of the lease in lieu of a portion of the rent, and we are given to understand that other tenants have been acquired under similar arrangements.

To the 1966 landlord who must compete for tenants, a building with modern appurtenances is a distinct asset. Contractual arrangements with tenants, in which, in consideration of rental concessions, the tenant makes his own alterations and improvements is of questionable advantage in the long run. Not only do the tastes of prospective occupants vary, to the end that a building may assume a variety of changes, and equipment installations, which detracts from its character, but the tenant's amortization of his investment over a shorter period of time than the landlord would find it necessary to do, reduces the gross rental which might otherwise be obtained.

■ Both of these considerations suggest, in the situation at hand, that good management urges modern equipment and a coordinated plan of maintenance and improvement.

Desirable as this approach may be, for the trustees to embark on such a program and charge the necessary outlay against trust income, by way of reserve for physical depreciation and obsolescence, authority express or implied, must be found within the trust instrument. 54 Am.Jur., Trusts § 289.

■ In the extracts from the Clapp Will, hereinbefore quoted, an intent is demonstrated in that the testatrix directed that the trustees "erect and maintain in the best of condition" this memorial building. This coupled with the purpose for which the building was erected, her desire to operate the building for as long as the law would permit her trustees to do so, does not indicate a contemplation that the building would exhaust itself as an income producer or as a fitting memorial by lack of attention.

There is nothing to support the usual theory that the settlor's primary concern was for the income beneficiaries vis a vis the remaindermen. It was Miss Clapp's intent to keep the building contemporary with current needs to the end that it would remain not only "a fitting reminder to the citizens of Portland" of her parents and grandparents, and "our life long interest in its welfare," but to keep it "especially adapted for occupancy by stores, offices and halls." This building did not "fall" into the trust from the estate of Miss Clapp; it was intentionally constructed as an income producer for the trust. The definition of "net rents" accepted in Thaxter, supra, 144 Me. at page 180, 67 A.2d 21 is, as "duration," likewise dictum.

Construing Miss Clapp's Will as we have done, does no violence to contemporary trust principles. The result is in accord with authority. See Note 60 Harvard Law Review (1946-47) 952; Bogert Trusts & Trustees, 2d Ed., § 829; Scott on Trusts, 2d Ed., § 239.4; Restatement of the Law, Trusts 2d, § 239, Illustration h. Buildings.

It is held, therefore, that under the terms of the testamentary trust and the facts involved, the trustees are authorized, by implication, to create a fund reasonable in amount, from gross income, as a reserve for physical depreciation (deterioration) and physical obsolescence,—under the supervision of the Probate Court. See Fidelity Union Trust Co. v. McGraw et al. (N.J. Chancery 1946) 138 N.J.Eq. 415, 48 A.2d 279 for definitions.

The case is remanded to the single Justice for determination and allowance of reasonable costs and counsel fee to the defendants.

So ordered.