MERCHANTS MUTUAL CASUALTY CO. *v.* MARY C. KILEY & *a.*
NATIONAL GRANGE MUTUAL LIABILITY CO. *v.* SAME.
NEW HAMPSHIRE AUTO CO. & *a. v.* SAME.
HENRY W. KIELY *v.* SAME.

324

*Murchie & Murchie.* (*Mr. Alexander Murchie* orally), for the plaintiffs.

*Robert W. Upton* and *John H. Sanders* (*Mr. Upton* orally), for the defendants.

BRANCH, J. It may be assumed that, in the absence of court proceedings, the release executed by Thomas J. Kiley as father and next friend of his daughter, would not bar her rights. The case of *Tripp* v. *Gifford*, 155 Mass. 108, is decisive upon this point and received the approval of this court in *Beliveau* v. *Company*, 68 N. H. 225, and *Hollis* v. *Tilton*, 90 N. H. 119. The real questions at issue have to do with the bringing of the next friend suit and the effect of the docket marking therein.

The trial court found and ruled that "the said Thomas J. Kiley, in his capacity as father and next friend of Mary C. Kiley, did have authority to undertake a settlement for his minor child, and that such settlement is a bar to the pending action if the question below is determined in favor of the petitioners." To this finding the defendants excepted, and the first position of the defendants is . that Thomas J. Kiley never authorized the bringing of the next friend suit, that the power of attorney above quoted merely authorized the bringing of a suit to determine his rights as father of Mary C. Kiley. It is true that a strict construction of the power would lead to this conclusion. No reason for such a construction appears, however. The language is that of the insurance adjuster who prepared the document and should be construed in the light of "the facts surrounding the undertaking." *Weston* v. *Ball*, 80 N. H. 275, 276. Thus construed, we think it plain that the authority given to Mr. Murchie "for me and in my name, to commence, prosecute and enforce, or to defend, answer or oppose all suits, actions, or other legal proceedings touching a certain accident which occurred to the said Mary C. Kiley" on or about November 23, 1934 authorized Mr. Murchie to bring the suit of Mary C. Kiley by her next friend, Thomas J. Kiley, against the defendants Darrah and Kiely.

The subsidiary claim of the defendants that Thomas J. Kiley was disqualified from bringing the suit as next friend because he had already received payment of Mary's claim and covenanted to save the plaintiffs harmless against any further suits for the same cause, is overruled. The suggestion that Thomas violated his agreements embodied in the release which he had executed, by bringing a suit which was necessary to make the settlement binding, upon which the defendants insisted and authority for which they obtained from him, is so lacking in realism that it does not merit serious consideration.

The further question transferred by the court without ruling, *i.e.*, "whether the marking 'neither party, no further action for

the same cause,' having been filed and entered without judicial approval, is equivalent and has the effect of a judgment and bar to Mary's claim," must be answered in the affirmative. The defendant relies upon the following statement from *Means* v. *Hoar*, 110 Me. 409: "When, however, the words 'no further action for the same cause' are added, as in the case at bar, the plaintiff's right of further action is barred, not because any judgment of the court follows, but because the plaintiff has entered into an agreement that he will bring no further suit; and he is bound by his agreement." We find ourselves unable to agree with this statement of the law. The docket marking, although made in accordance with the stipulation of the parties, was none the less a determination of the court that there should be "no further action for the same cause." "Entered conformably to a stipulation for it, the decree [order] was nevertheless 'the conclusion of the court upon all the evidence.' *Wallace* v. *Wallace*, 74 N. H. 256, 260." *Eaton* v. *Eaton*, 90 N. H. 4. It was plainly an order of court putting an end to the defendant's cause of action. It is equivalent to and has the effect of a judgment and bar to Mary's claim.

If pressed for a categorical answer to the question whether this order is a judgment or not, our answer would probably be in the affirmative. If "a judgment is the law's last word in a judicial controversy," (30 Am. Jur. Judgments, s. 2), it is difficult to understand why this order should not be classified as a judgment. The English common law knew "a judgment of *nolle prosequi*" which was "a judgment entered against the plaintiff where, after appearance and before judgment, he says he will not further prosecute his suit." 2 Bouvier Law Dictionary, 25, 26. The parallel seems obvious.

The trial court found that "the method employed by the petitioner respecting the settlement of the claims of a minor is one which has been resorted to as a common and usual practice." This obviously has reference to the filing of the stipulation without first obtaining judicial approval for it, rather than to the precise docket marking agreed upon. Thus understood, the statement is accurate and no adequate reason for insisting upon a change in practice appears. The same practice was recognized in *Tripp* v. *Gifford*, 155 Mass. 108, upon which the plaintiff relies. "Sometimes, but very rarely, the proposed arrangement is brought to the attention of the court and its sanction obtained. In most instances, however, the settlement is made and the judgment entered without calling the attention

of the presiding justice to it, or obtaining his approval. That such judgments conclude the minor we have no doubt." *Tripp* v. *Gifford, supra,* quoted in *Beliveau* v. *Company,* 68 N. H. 225, 229.

Some explanation of the long-standing practice prevailing here and in Massachusetts is perhaps to be found in an act of the Massachusetts General Court passed in 1668, at a time when New Hampshire was under the jurisdiction of Massachusetts, which provided as follows: "It is ordered by this court and the authority thereof that the age for plaintiffs and defendants in civil cases before any magistrate, commission, or court of judicature, shall be twenty-one years of age, and for all persons under that age, their parents, masters or guardians, as they shall see meet, shall plead and defend their right and interest as the matter may require." Colonial Laws of Mass., *ed.* of 1887, 2. In view of the authority thus granted to parents, masters and guardians, it is not surprising that their disposition of the suits of minors did not require or receive the sanction of the court.

The case last cited also established the principle that "There is no distinction between an infant and an adult with regard to the binding effect of a judgment. He will not be permitted to dispute it unless upon the same grounds as an adult might have disputed it, such as fraud, collusion or error; and no recognizable distinction is believed to exist between the case of an entry of judgment in regular course by an attorney of a party *sui juris* and the case of a like entry by an attorney properly employed by the representative of an infant to conduct the suit." The rights of infants are believed to be sufficiently protected if they are permitted to dispute a judgment "upon the same grounds as an adult might have disputed it, such as fraud, collusion or error." Charges of fraud and collusion, however, made against reputable counsel, well and favorably known to the court, will not be sustained by showing merely that they brought an action for a next friend under the circumstances set forth above and disposed of by signing a stipulation, the effect of which has been considered.

The trial court found as follows: "In their dealings with Mr. Kiley or any members of his family the court finds that no fraud or misrepresentation was practiced upon them by Mr. Avery or Mr. Messer (the insurance adjusters) nor was there any fraud on the part of" the other plaintiffs herein. "It cannot be said that . . . when the next friend and the defendant, and their respective counsel who are sworn officers of the court, act in good faith, it is necessary that an investigation of the fairness of a proposed adjustment

should be made or ordered by the court before disposing of the case." *Tripp* v. *Gifford, supra,* 111.

Obviously no question arises with reference to the provisions of chapter 169 of the Laws of 1937, which provides that "No settlement, the amount of which exceeds seven hundred and fifty dollars, of any suit brought in behalf of an infant by parent or next friend shall be valid unless approved by the court in which the action is pending. . . ." It should be pointed out, however, that as to cases of settlements for less than seven hundred and fifty dollars, the legislation impliedly validated the practice theretofore in force for all settlements.

In accordance with the foregoing considerations, there must be

*Judgments for the plaintiffs.*

All concurred.