Argued October 21, reversed and remanded December 9, 1974

FOX, *Appellant, v.* HOHENSHELT (No. 382 680),
*Respondent.*

528 P2d 1376

618

[redacted]

*Al J. Laue,* Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

*Francis Yunker,* Portland, argued the cause and filed the brief for respondent.

Before Schwab, Chief Judge, and Langtry and Thornton, Judges.

SCHWAB, C. J.

This is a filiation proceeding under ORS 109.-125.[1] Plaintiff filed a complaint in equity alleging that defendant was the father of plaintiff's child born out

_____

[1]
"(1) Any of the following may initiate proceedings under this section:

"(a) A mother of a child born out of wedlock or a female pregnant with a child who may be born out of wedlock; or

of wedlock and seeking a decree adjudging defendant to be the father and requiring him to pay child support and certain expenses. Defendant filed a general denial and an affirmative defense, stating:

"That on the 20th day of September, 1969, this plaintiff, then Mary A. Craig, executed and delivered to this defendant a release of claim, a copy of the said release being attached hereto marked Exhibit 'A' and made a part hereof; that in consideration thereof this defendant paid to this plaintiff the sum of $200.00."

Exhibit A to the affirmative defense read:

"I, MARY CRAIG, being first duly sworn, depose and say:

"That in approximately three months I shall

"(b) The Children's Services Division, if furnishing support to the mother for the benefit of the child or if furnishing services or assistance of any kind because of the birth, or impending birth, of the child;

"(c) The duly appointed and acting guardian of the child, conservator of his estate or a guardian ad litem, if the guardian or conservator has the physical custody of the child or is providing support for the child.

"(2) Proceedings shall be initiated by the filing of a duly verified petition of the initiating party. The petition shall contain:

"(a) The name of the mother of the child born out of wedlock or the female pregnant with a child who may be born out of wedlock;

"(b) Facts showing the petitioner's status to initiate proceedings;

"(c) A statement that the defendant is the father;

"(d) The probable time or period of time during which conception took place;

"(e) A statement of the specific relief sought; and

"(f) A prayer for the issuance of citation to the defendant requiring him to appear at a time and place certain to answer the petition.

"(3) In all cases of public interest, the proceedings may be commenced by the district attorney when requested by a person named in subsection (1) of this section.

"* * * * *." ORS 109.125.

give birth to a child out of wedlock. I have decided this baby should be placed for adoption at birth. That for the sum of $200.00 and other valuable consideration I release and forever discharge one TERRY HOHENSHELT from any and all claims that may be brought against him to establish him as the putative father of this unborn child.

"DATED this 20th day of September, 1969."

Plaintiff's demurrer to the affirmative defense was overruled. Thereafter plaintiff filed a reply to which a demurrer was also sustained. For reasons which we need not consider here, plaintiff refused to plead further after the demurrer to her affirmative reply was sustained, and appeals from an order of the trial court dismissing the proceeding.

On appeal plaintiff contends that the release she executed was not a bar because ORS 109.220 makes such an agreement subject to court approval. Defendant contends that the release is binding under ORS 109.230.

ORS 109.220 states:

"The judge of the juvenile court of the county in which the female referred to in ORS 109.125 resides may make such compromise or arrangement with the putative father of any child born out of wedlock relative to the support of the child as the judge deems equitable and just, and thereupon may discharge the putative father from all liability for the support of the child."

ORS 109.230 states:

"Any contract between the mother and father of a child born out of wedlock is a legal contract, and the admission by the father of his fatherhood of the child is sufficient consideration to support the contract."

Neither brief attempts to reconcile the two statutes.

Originally in Oregon there was no duty on the part of a father to support his illegitimate child. It was the obligation of the mother to provide for and support the child. As a consequence, any contract in which the putative father assumed all or part of the duty to support his illegitimate child was unenforceable, due to a lack of consideration. *Nine v. Starr, 8 Or 49* (1879).

In 1917 the legislature enacted Oregon Laws 1917, ch 48, which, with some modifications not important to the case before us, remain presently in force under the general heading, "Filiation Proceedings," ORS 109.125 through ORS 109.230. Oregon Laws 1917, ch 48, p 67, provided that if a man was found to be the father of an illegitimate child, he was

"* * * chargeable with its future maintenance in such sum and in such manner as the court shall direct, and also for all expenses incurred by such county or by the mother of such child for the lying-in and attendance of the mother during her sickness, and also for the care and support of such child since its birth, and for the costs of such prosecution * * *." Oregon Laws 1917, ch 48, § 5, p 67, codified in ORS 109.150, *repealed* Oregon Laws 1969, ch 619, § 15, p 1528.

The 1917 Act also provided a procedure whereby a public officer could institute filiation proceedings without the consent or cooperation of the mother, if the child was or was likely to become a public charge. Oregon Laws 1917, ch 48, § 10, p 69, codified in ORS 109.200, *repealed* Oregon Laws 1969, ch 619, § 15, p 1528. This authorized the state to protect its interest even if the mother was unwilling to initiate proceedings.

Several methods were provided in the statute whereby the putative father could be discharged from

further liability for support of the child: Oregon Laws 1917, ch 48, § 12, p 69, codified in ORS 109.220, provided that the judge of the juvenile court could compromise with the putative father of the child "as the said judge shall deem equitable and just"; Section 3 of the same Act provided that:

> "If the accused person shall pay or secure to be paid to the female complaining, such sum of money, or other property, as she may agree to receive in full satisfaction, *and as shall be approved by the judge of the juvenile court* of the county wherein such action is pending, of which agreement and approval the justice shall make a memorandum on his docket, and shall also give bonds with sufficient sureties to be approved by the justice to the county, conditional to secure and indemnify such county from all charges for the maintenance of such child, and shall also pay all expenses, if any, incurred by such county for the lying-in and support and attendance upon the mother during her sickness, and the costs of prosecution, the justice shall discharge such accused person." (Emphasis supplied.) Oregon Laws 1917, ch 48, § 3, p 67, codified in ORS 109.130, *repealed* Oregon Laws 1969, ch 619, § 15, p 1528.

■■ The above statutes evidence an intent by the legislature, at the time the original filiation statute was enacted, to protect several distinct interests. By providing that public officials can, on their own initiative, institute a filiation proceeding if it appears that the child will become a public charge, and by requiring the putative father to post a bond to indemnify the county from all expenses for maintenance of the child as a precondition to being discharged from further liability under ORS 109.130 *(repealed)*, the legislature declared that the state had an interest in filiation proceedings. By providing that in addition to the requirement of

posting bond a judge must approve the agreement between the mother and father in order to discharge the father, the legislature decided that an impartial review of the agreement was necessary to protect the interests of the child.

As part of the 1917 Act the legislature included the following section:

> "Any contract between the mother and father of a child born out of wedlock is a legal contract, and the admission by the father of his fatherhood of the child is sufficient consideration to support the contract." ORS 109.230. (Present version.) Oregon Laws 1917, ch 48, § 13, p 69. *Amended* Oregon Laws 1961, ch 338, § 6, p 475, but only to change the wording slightly and remove the word "illegitimate" which appeared in the original statute.

There is no language to the effect that such an agreement between parents can discharge the putative father from all further liability for the support of his child.

We need not interpret ORS 109.230 as depriving a child of the protection given by ORS 109.220, and the other sections of the filiation statute. We interpret it as extending, not minimizing, the rights of the child. For example, it prevents the putative father from making promises to support the child or provide for the child in his will, and then after other remedies are barred by statutes of limitation, repudiating the contract.

The Oregon Attorney General has expressed the opinion that:

> "If the contract is made with the mother without instituting the proceedings provided in sections 16-901, et seq., Oregon Code 1930 [ORS 109.110 et seq], it would not appear to release the father from

liability under section 16-910 [ORS 109.200 *(repealed)* authorizing suit by public officials] if the child is or becomes a public charge." 18 Op Att'y Gen 190 (1936-1938).

The opinion says that a contract under ORS 109.230 cannot completely discharge the father but implies that if the child is not a public charge, the agreement may be binding on the mother.

In *Dannells v. U.S. National Bank,* 172 Or 213, 138 P2d 220 (1943), the Supreme Court interpreted the intent of the filiation statute:

"* * * Since then [1917] it has been and is the policy of this state not only to permit but to require any man who is responsible for any unmarried female becoming pregnant with a child, which, if born alive, may be an illegitimate child or child born out of wedlock, to pay or secure to be paid to her such sum of money or other property as she may agree to receive in full satisfaction *and shall be approved by the judge of the juvenile court* of the county where such action is pending * * *." 172 Or at 241-42. (Emphasis supplied.)

Another opinion of the Attorney General expresses the view that the juvenile court can consider and approve a contract between an unwed mother and the putative father, discharging the father from further liability, without a "public proceeding" being filed. 31 Op Att'y Gen 106 (1962-1964). As in *Dannells,* no mention of ORS 109.230 is made, but a right of access to the courts is presumed.

In 1969 the Oregon legislature revised the filiation statutes. The revision affected only procedure—the basic policy remained the same. As part of this revision ORS 109.130 was repealed, Oregon Laws 1969, ch 619, § 15, p 1528. In its place ORS 109.155 (Oregon

Laws 1969, ch 619, § 5, p 1525) was enacted, setting forth the role of the court in filiation proceedings:

"* * * * *

"(2) If the court or jury finds, from a preponderance of the evidence, that defendant is the father of the child who has been, or who may be born out of wedlock, the court shall then proceed to a determination of the appropriate relief to be granted. The court may approve any settlement agreement reached between the parties and incorporate the same into any decree rendered, and it may order such investigation or the production of such evidence as it deems appropriate to establish a proper basis for relief.

"* * * * *

"(4) The court shall have the power to order the defendant to pay such sum as it deems appropriate for the past and future support and maintenance of the child during its minority and while the child is attending school and the reasonable and necessary expenses incurred or to be incurred in connection with prenatal care, expenses attendant with the birth and postnatal care. The court may grant the prevailing party reasonable costs of suit, including reasonable attorney fees." ORS 109.155. (Present version.)

This section eliminates the requirement that the father post bond to indemnify the county, and gives the court discretion to determine the relief to be granted. One of the alternatives given to the court is incorporating an agreement between the parties into the decree.

The fact that the court can approve an agreement between the parties and incorporate it into its decree implies that without such approval the agreement is not binding on the court, and cannot prevent access to the courts. Once a support order is incorpo-

rated into a decree it can be prospectively modified by the court upon petition by either party. ORS 109.165.[2]

These provisions indicate that the legislature did not believe that the legitimate interests of the child and the state could adequately be protected by a contract between the mother and father which was not originally and could not in the future be subjected to judicial scrutiny.

The 1969 law contained a section on who could initiate filiation proceedings (Oregon Laws 1969, ch 619, § 1, p 1524, codified in ORS 109.125) which slightly broadened the provisions under the old statute. Under the 1969 law, proceedings could be initiated by (1) the mother of the child, (2) the State Public Welfare Commission (now the Children's Services Division) if it was providing or had provided financial assistance for the child, and (3) a duly appointed guardian who had custody and was providing support for the child, or the estate of the child (now the conservator of the estate). ORS 109.125 (3) provides that "in all cases of public interest" the district attorney may bring suit if requested by any of the above parties.

By specifically allowing parties other than the mother of a child to institute filiation proceedings, the legislature again recognized that other interests besides those of the mother are involved. And a method is provided whereby these interests can be protected.

---

[2]
"Upon motion of either party the court may set aside, alter or modify so much of the decree as may provide for the support of the minor child or child attending school. As to any instalment or payment of money which has accrued up to the time either party files a motion to set aside, alter or modify the decree, the decree is final and the court does not have power to change it. A child attending school is a party for purposes of this section." ORS 109.165.

It is apparent that the mother of a child cannot, by contract, cut off the statutory right of the other parties mentioned in ORS 109.125 to initiate proceedings. The more difficult situation arises where, as in the case at bar, the mother has instituted suit in her own name.

The legislative history of the 1969 legislation shows little except a few general comments to the effect that a major purpose of the filiation statute was to provide for the support of children born out of wedlock and see that they did not become wards of the state. *Minutes,* House Judiciary Committee at p 2 (Feb. 25, 1969); *Minutes,* Senate Judiciary Committee at p 1 (May 14, 1969). But the legislation itself shows an awareness by the legislature of the need for judicial scrutiny of support agreements.

■ An argument can be made that because she signed a contract limiting her recourse to the courts the mother should be precluded from further action, especially in view of ORS 109.230. Such an interpretation if applied to a proceeding by her on behalf of her child would, however, be contrary to ORS 109.125 through 109.220. These statutes are for the benefit of the child and not the mother. Only child support and expenses of prenatal and postnatal care which are of direct benefit to the child may be ordered as a result of a filiation proceeding. In order not to construe ORS 109.230 in such a manner as to effectively negate the clear legislative intent contained in the remainder of the filiation law, we construe ORS 109.230 as binding the mother only as to damages she might be conceivably entitled to recover which are purely personal to her, and not as preventing her from proceeding under ORS 109.125 for the benefit of the child. As the

Minnesota court said long ago in *State v. Dougher*, 47 Minn 436, 50 NW 475 (1891):

> "* * * Under the statute, the interests of the child and the state are to be considered as well as those of the mother. The purpose of the statute is to protect all these, and, to give effect to that intent, a private settlement with the mother, in satisfaction of her claim for the injury and expenses suffered and incurred by her, cannot be held to be a bar to proceedings instituted in the name of the state under the statute, though the court may give to the payments made by the defendant to her such consideration as they may be entitled to in adjusting the terms of the judgment. The settlement provided for in * * * [the statute] is the only one which authorizes the discharge of the defendant. Under that, all interests are provided for and protected." 47 Minn at 437.

*See also,* cases collected in Annotation, 84 ALR2d 521 (1962), holding that where there are statutory provisions relating to the settlement or release of a bastardy claim, a lump sum settlement or release between the mother and putative father was not a bar to bastardy proceedings unless the statutory requirements had been met.

■■ In view of (1) a legislative policy recognizing and protecting all interests as expressed in the entire filiation proceedings statute, (2) the nonspecific nature of the language in ORS 109.230, and (3) a basic policy that two parties should not by their action be able to prejudice the rights of a third, we hold that a contract between the mother and putative father of an illegitimate child cannot without judicial scrutiny and approval preclude future filiation proceedings for purposes of child support. We hold that this is the rule irrespective of who institutes the proceedings. Filiation proceedings are suits in equity, ORS 109.135.

In such a proceeding the court has the power to weigh all of the factors, including the needs of the child, the interests of the state, the amount of money already paid by the putative father under a contract or otherwise, and the mother's financial position. If the court finds that the child's and the state's interests are adequately protected, it may choose merely to incorporate an agreement previously reached between mother and father into its decree, as provided by ORS 109.-155, subject to future modification under ORS 109.165.

Reversed and remanded.