Donna M. ARSENAULT

v.

Leo CARRIER.

Supreme Judicial Court of Maine.

Aug. 18, 1978.

Eaton, Glass, Marsano & Hammond by Francis C. Marsano, Belfast (orally), for plaintiff.

Childs, McKinley & Emerson by Roderick R. Rovzar (orally), Dana W. Childs, Portland, for defendant.

Before DUFRESNE, C. J., and POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

DELAHANTY, Justice.

In August of 1960, the plaintiff, Donna Arsenault, while pregnant, brought a "bastardy" complaint under the then applicable "bastardy" statutes, 19 M.R.S.A. §§ 251–262, and charged the defendant, Leo Carrier, with being the father of her child, Tony Arsenault. The parties settled that action, and the plaintiff signed an instrument indicating receipt from the defendant of $750.00 "in full settlement Carrier case." Thereafter, the following docket entry appeared: "Neither party. No further action for same cause, by agreement of counsel."

The present action commenced in May of 1974 when Ms. Arsenault filed a complaint under the current paternity statutes, 19 M.R.S.A. §§ 271 et seq., the prior "bastardy" provisions having been replaced in 1967 by the Uniform Act on Paternity (Uniform Act). The complaint, brought in Ms. Arsenault's name, alleged that the defendant was the father of Tony Arsenault and sought a filiation decree and appropriate relief.

After the defendant interposed the affirmative defense of res judicata, the plaintiff moved and was appointed next friend to pursue and protect the child's rights under the Uniform Act. Relying upon the affirmative defense of res judicata, the Waldo County Superior Court in November of 1975 entered judgment for the defendant against the plaintiff, both in her own right and as next friend of the child. From this judgment, the plaintiff has appealed. We sustain the appeal.

On appeal, the plaintiff alleges that the 1960 settlement agreement did not bar a subsequent suit under the Uniform Act by either the mother or the child. Because we hold that res judicata does not preclude a paternity suit by the child, we decline to reach the issue of whether the mother would have been barred by her former agreement.[1]

Before discussing whether the child's present action is barred by res judicata, we pause to consider a separate and distinct argument which the defendant erroneously correlates with res judicata: whether the child's suit subjects the defendant to the retrospective application of the Uniform Act.

In *Thut v. Grant*, Me., 281 A.2d 1 (1971), a child was born in 1963 while the "bastardy" statutes were operative, but suit was

1. In *Harding v. Skolfield*, 125 Me. 438, 134 A. 567 (1926), it appears that a settlement agreement between the mother and the putative father would in certain circumstances preclude the mother from maintaining a subsequent cause of action. We note, however, a recent judicial trend holding that a prior settlement agreement relating to the mother's personal rights, viz., reasonable expenses for pregnancy and confinement, will not preclude a subsequent suit by her or in her behalf for the child's support and education. *Walker v. Walker*, 266 So.2d 385 (Fla.App.1972); *Fox v. Hohenshelt*, 19 Or.App. 617, 528 P.2d 1376 (1974); *Reynolds v. Richardson*, 62 Tenn.App. 269, 462 S.W.2d 233 (1970); *State v. Bowen*, 80 Wash.2d 808, 498 P.2d 877 (1972). *See* Annot., 84 A.L.R.2d 524 (1962).

We similarly express no opinion on the proper interpretation of 19 M.R.S.A. § 283, the Uniform Act's settlement agreement provision. That section states: "An agreement of settlement with the alleged father is binding only when approved by the court."

not brought until 1969 which was after the enactment of the Uniform Act. As more fully explained below, under the old "bastardy" statutes, the child had no cause of action against the putative father; however, under the Uniform Act, he had a direct claim. We found *inter alia* no problem of retrospectivity that would preclude a suit by the child through a next friend under the Uniform Act. As long as the minor was seeking a filiation order and *future* support, the Uniform Act was held to be operating prospectively.

■ Here, as in *Thut*, a suit by a minor through a next friend was brought under the Uniform Act although the child's birth occurred while the "bastardy" statutes were operative. Construing the present complaint as one seeking future support and education, the statute properly operates prospectively.

Concluding that the defendant is not being subjected to the retrospective application of the Uniform Act, we reach the issue of whether the child's suit was barred by the mother's former settlement agreement with the putative father.

■ In its classic formulation, the doctrine of res judicata provides that a final judgment[2] rendered by a court of competent jurisdiction precludes another suit between the same parties or their privies on the same cause of action. *Cianchette v. Verrier*, 155 Me. 74, 151 A.2d 502 (1959).

■ Res judicata prevents only the same *parties* or their *privies* from maintaining an identical cause of action. In determining who are the "parties" who will be bound by a prior judgment, we look beyond the nominal parties of record to the real parties in interest. As the Court stated in *Savage v. North Anson Manufacturing Co.*, 124 Me. 1, 4, 124 A. 721, 722 (1924):

> Under the term, "parties," the law includes all persons who, though not nominally parties, but being directly interested in the subject-matter, have a right to make a defense, or to control the proceedings, and to appeal from the judgment of the court, which right also includes the right to adduce testimony and cross-examine witnesses offered by the other side. Persons not having these rights are regarded as strangers to the cause, and, of course, are not bound.

*Accord, Burns v. Baldwin-Doherty Co.*, 132 Me. 331, 170 A. 511 (1934).

■■ Under the old "bastardy" statutes, the mother, except where indigent, was the real party in interest. She alone was authorized either to bring suit against the putative father, 19 M.R.S.A. § 251, or to enter into a settlement agreement with him, 19 M.R.S.A. § 258.[3] As the Court stated in *Roy v. Poulin*, 105 Me. 411, 74 A. 923 (1909):

---

**2.** That the first cause of action ended in a judgment of dismissal does not prevent the application of res judicata. Indeed, it is well settled that the very docket entry used in the instant case, " '[n]either party. No further action for same cause'. . . .'", would preclude this plaintiff from bringing another suit against the defendant on the same cause of action. *Means v. Hoar*, 110 Me. 409, 86 A. 772 (1913); *Gendron v. Hovey*, 98 Me. 139, 56 A. 583 (1903). Rather than viewing such a docket entry as a "final judgment" as other courts have done, *see Merchants Mut. Cas. Co. v. Kiley*, 92 N.H. 323, 30 A.2d 681 (1943), our Court in the above-cited cases proceeded upon the theory that the plaintiff's subsequent action was barred by the agreement not to bring another such suit. For purposes of the present discussion, we perceive no substantial difference between characterizing the docket entry as a final judgment or as an agreement not to bring further suit. *See* Annot. 2 A.L.R.2d 514, 565 n. 12 (1948).

**3.** Where the mother was indigent, a town could prosecute in her behalf, 19 M.R.S.A. § 259, or prevent her from entering into a settlement agreement with the putative father, 19 M.R.S.A. § 258.

The instant case is readily distinguishable from *Cook v. Cook*, 132 Me. 119, 167 A. 852 (1933). Interpreting a predecessor of 19 M.R.S.A. § 258, the Court found it necessary for the town to object to the settlement agreement during the term of court in which final judgment was entered. Since the town did not comply with the governing statute as interpreted by the Court, it was bound by the agreement. The case at bar does not present a question of statutory compliance; rather, it concerns the applicability of res judicata, an issue not before the *Cook* Court.

It is the mother who is authorized to invoke the statute. Overseers of the poor cannot invoke it, except in her behalf. In case of her death pending the suit, her executor or administrator is to prosecute it to final judgment. *It is her suit, her remedy.* . . . It opens the door of the Court to any unfortunate mother of a bastard child without exception. *Id.* at 412, 74 A. at 923. (emphasis supplied).

The illegitimate child was not an interested party to the bastardy proceedings. It was not until the adoption of the Uniform Act that a child through a next friend could seek a filiation decree and support order. Speaking for the Court in *Thut v. Grant, supra* at 6, Mr. Justice Webber explained:

As already noted, the child born out of wedlock had no common law right to compel support by the putative father. More importantly, the bastardy statutes repealed in 1967 had afforded no rights to such minor child. *Under those statutes he was merely the indirect beneficiary of rights afforded to his mother. The "Uniform Act on Paternity" for the first time grants direct rights to the minor child and imposes a new and direct liability upon one shown to be the father.* (emphasis supplied).

It is evident, therefore, that the minor, Tony Arsenault, could not have been a party to the prior action so as to be bound by the settlement agreement.[4] Nor was he in privity with his mother in the former action.

▓▓ Although the meaning of the term "privity" for res judicata purposes may be elusive, 1B Moore's Federal Practice § 0.411[1], at 1255 (2d ed. 1974), we have generally referred to it as a mutual or successive relationship to the same rights of property. *Huard v. Pion*, 149 Me. 67, 98 A.2d 261 (1953); *Maddocks v. Gushee*, 120 Me. 247, 113 A. 300 (1921). It does not typically arise from the relationship between parent and child. *Sayre v. Crews*, 184 F.2d 723 (5th Cir. 1950); *Detore v. Demers Bros., Inc.*, 312 Mass. 531, 45 N.E.2d 745 (1942); *Whitehead v. General Telephone Co.*, 20 Ohio St.2d 108, 254 N.E.2d 10 (1969); *see also* Annot., 41 A.L.R.3d 536 (1972). Where the child and the mother had no concurrent relationship to the same right, as may exist between trustee and trust beneficiary or guardian and ward, *see* 1B Moore's Federal Practice, *supra* at 1256, or where the child did not succeed to some interest of the mother's, no privity existed which would preclude the child's subsequent suit.

The entry shall be:

Appeal sustained.

Case remanded to the Superior Court for further proceedings consistent with this opinion.

DUFRESNE, A. R. J., sat at oral argument as Chief Justice but retired prior to the preparation of the opinion. He has joined the opinion as Active Retired Justice.

DUFRESNE, Active Retired Justice[1] (concurring).

In the summer of 1960, the defendant, Leo Carrier, was prosecuted in a civil complaint for being the father of the prospec-

---

4. Since the child was not the real party in interest in the prior proceeding, the defendant's reliance upon *Stevens v. Kelley*, 57 Cal.App.2d 318, 134 P.2d 56 (1943), is entirely misplaced. Construing a statute which authorized a paternity suit "in behalf of a minor illegitimate child, by his mother or guardian, or by a guardian ad litem . . . .", *id.* at 319, 134 P.2d at 57, the court concluded that under California law the child was the real party in interest. Since the child's rights had already been determined in a first suit brought by the mother, the child, by her guardian ad litem, was prevented from bringing a second action, notwithstanding that the child was not named as a party plaintiff in the first action. Under Maine law, where the child was not an interested party under the "bastardy" statutes, the *Stevens* rationale has no applicability. It should be noted that *Stevens v. Kelley* no longer appears to be sound law in California. *See Everett v. Everett*, 57 Cal.App.3d 65, 129 Cal.Rptr. 8 (1976).

1. Mr. Justice Dufresne sat at oral argument and participated in consultation while he was Chief Justice, and, on order of his successor, Mr. Chief Justice McKusick, was empowered and authorized to continue his participation in the case in his capacity of Active Retired Justice.

tive child of Donna Arsenault, the plaintiff, pursuant to the then existing bastardy statutory provisions (19 M.R.S.A., §§ 251–262). For the sum of seven hundred and fifty ($750.00) dollars, which the present plaintiff acknowledged receiving in full settlement of the case, a docket entry was recorded on August 30, 1960 which read: "Neither party. No further action for same cause, by agreement of counsel."

The plaintiff, in her present complaint against the same Leo Carrier under date of May 8, 1974, notwithstanding the reference settlement of the case, now seeks a paternity determination respecting her minor child, Tony Arsenault, born January 20, 1961, pursuant to our Uniform Act on Paternity (19 M.R.S.A., §§ 271–287), praying simultaneously for an order of support of the child, together with an allowance of reasonable counsel fees.

To counteract the defendant's affirmative defense that the subject matter of the present complaint had been previously adjudicated in a court of competent jurisdiction (res judicata), the plaintiff sought by motion permission to intervene for the benefit of her minor child, alleging

"that the child is entitled to be heard in this action as rights are available to said child exclusive of the right of the Plaintiff, even though the Plaintiff is contributing to the support of said child,"

and praying

"that some suitable person may be appointed as guardian ad litem for said child, including the Plaintiff, so that said cause of action may be finalized so that the child may have the benefit of the provisions of T. 19 M.R.S.A. § 272 et seq."

We note that the plaintiff was in violation of Rule 24(c), M.R.Civ.P., which provides that the motion to intervene "shall state the grounds therefor and shall be accompanied by a pleading setting forth the claim or defense for which intervention is sought." It is obvious, however, that the plaintiff was attempting to present, with her complaint for relief as mother of the child, as an alternative remedy, the minor child's identical complaint for the same re-

lief, should the defendant's affirmative defense of res judicata prove insurmountable in her own action. It would have been better practice if the plaintiff had, as provided by the rule, accompanied her motion to intervene by a separate complaint in the name of the child "pro ami." Thus, there is but one complaint in this case, and that is, that of the mother in her own right. We may, however, construe the granting of the motion to intervene as an allowance of the joinder of the minor child as plaintiff, through his mother as guardian ad litem, to prosecute the mother's complaint pursuant to Rule 20, M.R.Civ.P.

Realizing the omission, counsel for the plaintiff sought to have the judgment of dismissal of "this complaint" as to both the plaintiff in her own right and also as guardian ad litem for Tony Arsenault amended

"so as to allow the Plaintiff [to] frame a Complaint which will state a claim upon which relief can be granted unless the Court is of the opinion that Plaintiff may not do so because of the defense of res adjudicata."

This motion to amend the judgment was denied, the Justice below ruling that the affirmative defense of res judicata barred *any* relief.

I agree that there was error in this adjudication. But, with due respect to the majority of my colleagues, I do believe that the plaintiff is entitled to a resolution of the prime issue in this case, whether the plaintiff mother is barred from relief in her own right to seek support for her child from the putative father, because of her previous settlement of the case. I believe that she has, not only the right, but under certain circumstances the duty, to prosecute the father of her minor child to obtain the necessary support for such person incapacitated on account of his nonage, any previous release of the father from his duty to support his bastard child until majority without express legislative sanction and without court approval being against public policy.

Our former bastardy statute, this Court has said in *Roy v. Poulin*, 105 Me. 411, 74 A. 923 (1909),

"converts an existing moral obligation of the father into a legal obligation, enforceable like any other legal obligation upon the obligor . . . . The father of an illegitimate child is certainly under a moral obligation to assist the mother in its maintenance. Our statute makes the obligation legal and enforceable. The moral duty is made a legal one, . ."

The Legislature in unmistakable terms has equated the legal duty of the father of the bastard child to that of the father of the child born in wedlock.

"The father of a child which is or may be born out of wedlock is liable *to the same extent* as the father of a child born in wedlock, whether or not the child is born alive, for the reasonable expense of the mother's pregnancy and confinement and for the education, necessary support and funeral expenses of the child and reasonable counsel fees, for the prosecution of paternity proceedings." (Emphasis supplied) 19 M.R.S.A., § 271.

Under section 272 of the Paternity Act, not only may paternity be determined upon the *complaint of the mother,* child or the public authority chargeable by law with the support of the child, but, if paternity has been determined or has been acknowledged according to the laws of this State, the liabilities of the father may be enforced in the same or other proceedings by the mother, child or the public authority which has furnished or may furnish the reasonable expenses of pregnancy, confinement, education, necessary support or funeral expenses, and by other persons including private agencies to the extent that they have furnished the same.

Having in mind the broad powers of enforcement enacted by the Legislature to compel the natural father of a bastard child to meet his statutory obligations towards his child, for whose welfare such comprehensive legislation was prescribed, it is no wonder that this Court in *Thut v. Grant,* Me., 281 A.2d 1 (1971) ruled that both complaints, by the mother in her own right and by the mother as next friend of her minor child born out of wedlock and on his behalf, could stand together in a joint complaint.

I do recognize as this Court did in *Thut,* supra, that under the common law of this State the putative father owed no duty of support to his illegitimate child nor any duty to assist the mother of such child in such support. The duty imposed is wholly statutory. Id. at page 3. The former bastardy law imposed the legal duty of support on the putative father and the present paternity law continued the same, expanding, however, the class entitled to the enforcement thereof.

Whatever may have been the law prior thereto, the Legislature of 1959 provided the same flexibility to a decree of support of a child born out of wedlock under the old bastardy law as was the case of decrees of the divorce court respecting support of children of divorced parents.

"The court, upon petition of either the mother or the adjudged father, and upon hearing, limited to the issue of proper maintenance, may alter, amend or suspend any such order, or make a new order in lieu thereof, when it appears that justice so requires. The court may order the adjudged father to pay to the court for the mother sufficient money for the prosecution or defense of such petition. * *." Public Laws, 1959, c. 39.

The Paternity Act continues the same flexibility in section 275 where it is stated that "[t]he court has continuing jurisdiction to modify or revoke a judgment for future education and necessary support."

We said in *White v. Shalit,* 136 Me. 65, 1 A.2d 765 (1938) that "[t]here can be no final judgment as to infant children, in a divorce case. * * * Minor children of divorced parents are wards of the court. * * * Theirs are new legal statuses. * * * Due attention may be given to agreements between the parties, but control of the court is not abrogated."

Again, this Court stated in *Greenwood v. Greenwood,* 113 Me. 226, 229, 93 A. 360, 361 (1915):

"The State has an interest in the welfare of the child, and in all divorce proceedings that welfare is held to be superior to the wishes of the parent, and governs the court in its decrees as to custody and maintenance. This jealous regard for the rights of the child should look askance at contracts between parents attempting to shift the legal responsibility. The relation between husband and wife is one thing; that between parent and child is quite another."

This strong state policy favoring the promotion of adequate child support in the case of children of divorced parents, anchored upon the standard of what is in the best interest and welfare of the child, is equally applicable in the case of children born out of wedlock. As we said in *Pendexter v. Pendexter*, Me., 363 A.2d 743, 748 (1976), "it is most important that the judicial process within delegated legislative authority be given such flexibility as will allow implementation of the State's role of parens patriae in promoting the best interests and welfare of minor children," especially, I may add, in dealing with proceedings in which the support of children born out of wedlock is involved.

Notwithstanding the statement in *Thut*, supra, at page 6, that under the old bastardy statutes the child born out of wedlock was merely the indirect beneficiary of rights afforded to his mother, because he had no right to enforce them except in an action brought by his mother under her own right, such indirect benefit, nevertheless, is the major purpose of such legislation. While bastardy statutes provide relief to the mother in payment for her expenses of delivery, nursing, medicine and medical attendance during the period of her sickness and convalescence, together with moneys in aid to maintain the child, in fact the child is the prime beneficiary, as the filiation decree with support order is ultimately for his benefit. See *State v. Bowen*, 80 Wash.2d 808, 498 P.2d 877 (1972); *Fox v. Hohenshelt*, 19 Or.App. 617, 528 P.2d 1376, 1380 (1974).

The parents of an illegitimate child cannot bind themselves to avoid the duty of support which the law imposes upon them for the benefit of the child, except as authorized by the Legislature, upon approval of the court. Section 283 of the Uniform Act on Paternity so provides. Such was merely declaratory of existing law. In the instant case, the record reveals that the mother's 1960 bastardy proceeding terminated with the docket entry: "Neither party. No further action for same cause, by agreement of counsel." The child was not represented in the action by guardian ad litem and the settlement was not approved by the court.

It is true that the old bastardy statute (19 M.R.S.A., § 258) gave veto power to the overseers of the poor of the town interested in the support of the mother or child over any settlement between the parties. I do concede that this Court said in *Cook v. Cook*, 132 Me. 119, 121, 167 A. 852, 853 (1933), that "[u]ntil and unless such written objection is made [by the overseers of the poor of the town interested in the support], the parties have an absolute right to make a settlement on their own terms, . . ." This reference by the court to an unfettered right in the parties to release the putative father from his obligation of support toward his bastard child, in the context of the issue before the court in that case, must be viewed as gratuitous and mere dictum. It loses whatever legal efficacy it might have had at the time of its pronouncement, when one considers the progressive legislative development of a strong public policy of promoting adequate support of children born out of wedlock, even to the extent that it equate that of children of divorced parents as evinced by the 1959 legislation.

The authorities generally agree that contracts between the mother and natural father of a child born or to be born out of wedlock, even when the latter's relationship is only putative, are void as being against public policy, except when approved by a court of competent jurisdiction, and do not bar a subsequent action for support of the child either by the mother or the minor child through proper representation. See *Mayfield v. Commonwealth ex rel. Phelps*,

546 S.W.2d 433 (Ky., 1977); *Everett v. Everett,* 57 Cal.App.3d 65, 129 Cal.Rptr. 8 (1976); *Fox v. Hohenshelt,* 19 Or.App. 617, 528 P.2d 1376 (1974); *State v. Bowen,* 80 Wash.2d 808, 498 P.2d 877 (1972); *Walker v. Walker,* 266 So.2d 385 (Fla.App., 1972); *Lawrence v. Boyd,* 207 Kan. 776, 486 P.2d 1394 (1971); *Reynolds v. Richardson,* 62 Tenn.App. 269, 462 S.W.2d 233 (1970).

Cases such as *Means v. Hoar,* 110 Me. 409, 86 A. 772 (1913) and *Gendron v. Hovey,* 98 Me. 139, 56 A. 583 (1903), which give full force and effect to the instant docket entry of " 'neither party, no further action [for the] same cause' " as an absolute bar to subsequent litigation, are not controlling in an area where public policy prohibits the same. The plaintiff undoubtedly would be barred to relitigate issues already adjudicated, which are solely of her own concern, such as her expenses for the pregnancy, but, where the child's support is involved, she cannot make a binding agreement which would divest the court of jurisdiction therein, even at her own suit, unless the agreement were approved by the court.

So far as the minor child's independent right to enforce the duty of support against his natural father, even though he be the fruit of an extra-marital relationship, I agree fully with my colleagues that such right does exist.

The argument that the putative father may be the target of a multiplicity of suits is not persuasive, since the rules of civil procedure are made applicable in so far as they may appropriately apply to any action of support or paternity under the Paternity Act. 19 M.R.S.A., § 286. Intervention and joinder to get all the parties and all the issues before the court would be available.

The mother's release of the defendant in the instant case is no bar to relief for the benefit of the child on the issue of paternity or support. In *Buzzell v. Buzzell,* Me., 235 A.2d 828 (1967), we said that

"it has been almost universally held that a determination with respect to paternity in such a case [divorce case], the child not being a party, is not binding upon the child in any later action brought by him

or in his behalf involving his legitimacy or rights of inheritance."

The same rule applies in any subsequent litigation in the name of the child where the bastard child was not represented in previous bastardy proceedings between the parents.

There is no privity between parent and child in regard to their personal rights, and their separate action to enforce their respective rights will not be a bar, when reduced to judgment, against the other's rights to maintain his or her own action under the doctrine of res judicata. See *Bernard v. Merrill,* 91 Me. 358, 40 A. 136 (1898).

Furthermore, a minor child may prosecute his own action by next friend and as next friend the person authorized to represent the minor has full authority to settle or discharge a right of action on behalf of the minor and to consent to an entry of the appropriate judgment, provided the court is sufficiently informed of the case to act intelligently in the matter and approves the settlement. See *Ayer v. Androscoggin and Kennebec Railway Company,* 131 Me. 381, 163 A. 270 (1932).

I agree with the Court below that it had the power to appoint, as it did, the mother as guardian ad litem to represent the interests of her minor child in her pending action. *Maine National Bank v. Petrlik,* Me., 282 A.2d 660 (1971).

I reiterate the language of *Pettengill v. Gilman,* 126 Vt. 387, 232 A.2d 773 (1967), as approved in the reference case:

"The law's careful concern for the representation of an infant in court is equally protective of the manner in which his rights are to be determined.

"It has been generally held that the authority of counsel and guardian appointed to represent a minor in litigation does not include the power to submit his case on conceded facts. This general rule applies unless it appears the facts agreed upon are to the advantage of the infant, or at least do not jeopardize the infant's rights. Except where the court is satis-

fied these safeguards prevail, facts which might be the subject of concession on the part of adults should be proved when asserted against infants."

From this record, it does not appear that the plaintiff is in conflict of interest with her minor son and that his interest in his mother's claim for his support from the defendant will be jeopardized by her representation. However, on remand, it may be that the defendant may wish to move the court for a formal joinder of the minor son as plaintiff to set at rest any future litigation beyond the instant one.

I concur in sustaining the appeal.